---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## IN RE: DEEPWATER HORIZON

-------------------------------------------------------------------------------

**PARK NATIONAL CORPORATION, and its wholly owned entities and subsidiaries including; VISION PARK PROPERTIES, L.L.C.; SE PROPERTY HOLDINGS, L.L.C., individually and as successor in interest to; VISION BANK,**

Plaintiffs-Appellants

**v.**

**BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRITON ASSET LEASING GMBH; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated, formerly known as Sperry Sun Drilling Services,**

Defendants-Appellees

---

On Appeal from the United States District Court
For The Eastern District of Louisiana
The Hon. Carl Barbier, Judge Presiding

---

## BRIEF OF APPELLANTS

---

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A**.
Wesley A. Bowden
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Tel:  850-435-7186
Fax: 850-436-6186
wbowden@levinlaw.com

**SCHIFFER HICKS JOHNSON PLLC**
Marc S. Tabolsky
700 Louisiana, Suite 2650
Houston, Texas 77002
Tel: 713-357-5150
Fax: 713-357-5160
mtabolsky@shjlawfirm.com

*Attorneys for Appellants Park National Corporation, and its wholly owned entities and subsidiaries including; Vision Park Properties, L.L.C.; SE Property Holdings, L.L.C.; individually and as successor in interest to; Vision Bank*

ii

# CERTIFICATE OF INTERESTED PERSONS

No. 18-31292

*Park National Bank, et al. v. BP Exploration & Production, Inc., et al.*

Pursuant to Fifth Circuit Rule 28.2.1., the undersigned counsel of record for Plaintiffs-Appellants Park National Corporation, and its wholly owned entities and subsidiaries including; Vision Park Properties, L.L.C.; SE Property Holdings, L.L.C.; individually and as successor in interest to; Vision Bank ("Park National") certify that the listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiffs-Appellants: | Park National Corporation, and its wholly owned entities and subsidiaries including; Vision Park Properties, L.L.C.; SE Property Holdings, L.L.C.; individually and as successor in interest to; Vision Bank |

| | |
|---|---|
| Counsel on Appeal Only: | Marc S. Tabolsky<br>**SCHIFFER HICKS JOHNSON PLLC**<br>700 Louisiana, Suite 2650<br>Houston, Texas 77002<br>Tel: 713-357-5150<br>Fax: 713-357-5160<br>mtabolsky@shjlawfirm.com |
| Counsel at Trial and on Appeal: | Wesley A. Bowden<br>**LEVANTINO, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA**<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Tel: 713-871-9000<br>Fax: 713-871-8962<br>wbowden@levinlaw.com |
| Defendants-Appellees: | BP Exploration & Production, Incorporated; BP America Production Company; BP, P.L.C. |
| Counsel: | Don K. Haycraft<br>Devin C. Reid<br>Russell Keith Jarrett<br>**LISKOW & LEWIS LLP**<br>701 Poydras Street, Suite 5000<br>New Orleans, LA 70139<br>Telephone: (504) 556-4128<br>Facsimile: (504) 556-4108<br>dkhaycraft@liskow.com<br>dcreid@liskow.com<br>rkjarrett@liskow.com |

Andrew Langan
Matthew T. Regan
Martin R. Martos II
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
andrew.langan@kirkland.com
matthew.regan@kirkland.com
martin.martos@kirkland.com

George W. Hicks, Jr.
Aaron L. Nielson
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5200
Facsimile:   (202) 879-5200
george.hicks@kirkland.com
aaron.nielson@kirkland.com

Defendant-Appellee:             Transocean Offshore Deepwater
                                Drilling, Incorporated; Transocean
                                Deepwater Incorporated;
                                Transocean Holdings, L.L.C.; Triton
                                Asset Leasing GMBH

| | |
|---|---|
| Counsel: | Kerry J. Miller |
| | Daniel John Dysart |
| | **FISHMAN HAYGOOD, LLP**. |
| | 201 Saint Charles Ave., Suite 4600 |
| | New Orleans, LA 70170 |
| | Telephone: 504-566-5200 |
| | Facsimile: 504-636-4000 |
| | kjmiller@fishmanhaygood.com |
| | ddysart@fishmanhaygood.com |
| | |
| Defendants-Appellees: | Halliburton Energy Services, Incorporated; Sperry Drilling Services, a division of Halliburton Energy Services, Incorporated; |
| | |
| Counsel: | R. Alan York |
| | **REED SMITH LLP** |
| | 811 Main Street, Suite 1700 |
| | Houston, TX 77002 |
| | Telephone: 713-469-3800 |
| | Facsimile: 713-469-3899 |
| | AYork@ReedSmith.com |

**<u>Additional Information Relating to Park National Corporation:</u>**

Park National Corporation is a publicly held bank holding company and thus has no parent corporation.  No publicly traded company owns 10% or more of its stock.

<u>/s/ Wesley A. Bowden</u>
Wesley A. Bowden
Attorney of Record for
Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants Park National Corporation, and its wholly owned entities and subsidiaries including; Vision Park Properties, L.L.C.; SE Property Holdings, L.L.C.; individually and as successor in interest to; Vision Bank (collectively "Park National") submit that oral argument is warranted in this case. Park National believes oral argument would be helpful given the length and complexity of the record as well as the material differences between the record and facts in this case as compared to other recent decisions of this Court addressing whether failure to comply with other pretrial orders justified the extreme sanction of dismissal with prejudice.

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................................................iii

Statement Regarding Oral Argument................................................................viii

Table of Contents ..................................................................................... ix

Table of Authorities ................................................................................. xi

Statement of Jurisdiction...............................................................................1

Issues Presented .........................................................................................2

Statement of the Case ..................................................................................3

Summary of the Argument...........................................................................12

Standard of Review......................................................................................15

Argument .....................................................................................................16

I.   The District Court Abused Its Discretion when it Dismissed with
     Prejudice Park National's Claims. ...........................................................16

     A.   The District Court's Dismissal Order Should Be Reviewed as a
          Dismissal for Failure to Comply with Discovery Order and Not a
          Case Management Order.................................................................18

          1.   The Standards Governing Dismissal for Violating Discovery
               Orders and Docket-Management Orders. ..............................19

          2.   Dismissal for Failing to Timely Comply with PTO 65 Should
               Be Reviewed under the Discovery-Order Standard. ...............22

B. The District Court Abused Its Discretion Under Either the Discovery-Order Standard or the Case-Management Order Standard. ....................................................................26

    1. Discovery-Order Standard .............................................26

    2. Docket-Management-Order Standard ...........................29

C. The Court Should Review the District Court's Dismissal Order Itself and Not Solely the Order Denying Park National's Rule 59(e) Motion. ......................................................................36

II. Alternatively, the District Court Abused Its Discretion When It Denied Park National's Motion for Reconsideration. ...........................................38

Conclusion .......................................................................................42

Certificate of Service .....................................................................43

Certificate of Compliance ............................................................45

CASES                                                                                        PAGE

*Alvarado v. Texas Rangers,*
    2005 WL 1420846 (W.D. Tex. June 14, 2005) ....................................................40

*Arrieta v. Local 745 Int'l Bhd. Of Teamsters,*
    445 F. App'x 760 (5th Cir. 2011) ..................................................................39

*ATD Combusters, LLC v. Ameritube, LLC,*
    2019 WL 1921615 (W.D. Tex. Jan. 23, 2019) ...............................................23

*Berry v. CIGNA/RSI–CIGNA,*
    975 F.2d 1188 (5th Cir. 1992) .................................................................. 20, 22

*Brown v. Thompson,*
    430 F.2d 1214 (5th Cir. 1970).....................................................................32

*Doe v. Am. Airlines,*
    283 F. App'x 289 (5th Cir. 2008) ...............................................................20

*Durham v. Florida East Coast Railway Co.,*
    385 F.2d 366 (5th Cir. 1967)........................................................................32

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) .........................................................................22

*Fahquhar v. Steen,*
    611 F. App'x 796 (5th Cir. 2015) ...............................................................39

*FDIC v. Conner,*
    20 F.3d 1376 (5th Cir. 1994) ............................................................ 15, 18, 20

*Hanover Ins. Co. v. Superior Labor Servs., Inc.,*
    2017 WL 3582385 (E.D. La. Aug. 18, 2017)............................................ 39, 40

*Harrel v. Dixon Bay Transp. Co.,*
718 F.2d 123 (5th Cir. 1983) ...................................................................16

*In re Benjamin Moore & Co.,*
318 F.3d 626 (5th Cir. 2002)...................................................................39

*In re Deepwater Horizon (Graham),*
2019 WL 1894704 (5th Cir. Apr. 29, 2019) ................................ *passim*

*In re: Deepwater Horizon (Barrera),*
907 F.3d 232 (5th Cir. 2018) ....................................................... *passim*

*In re: Deepwater Horizon (Perez),*
713 F. App'x 360 (5th Cir. 2018) ............................................... 12, 37

*John v. Louisiana,*
828 F.2d 1129 (5th Cir. 1987) ................................................................28

*McGillivray v. Countrywide Home Loans, Inc.,*
360 F. App'x 533 (5th Cir. 2010)...........................................................39

*McGowan v. Faulkner Concrete Pipe Co.,*
659 F.2d 554 (5th Cir. 1981) ..................................................................34

*McNeal v. Papasan,*
842 F.2d 787 (5th Cir. 1988) ....................................................... *passim*

*Miller v. BAC Home Loans Servicing, L.P.,*
726 F.3d 717 (5th Cir. 2013) ..................................................................16

*Moore v. CITGO Ref. & Chemicals Co., L.P.,*
735 F.3d 309 (5th Cir. 2013) ...................................................... 20, 26

*Rogers v. Kroger,*
669 F.2d 317 (5th Cir. 1982) ...................................................... 21, 22

*Sealed Appellant v. Sealed Appellee,*
452 F.3d 415 (5th Cir. 2006) ...................................................... 21, 22

*Tello v. Comm'r,*
  410 F.3d 743 (5th Cir. 2005) ........................................................................ 22, 33

*Templet v. HydroChem Inc.,*
  367 F.3d 473 (5th Cir. 2004) ...........................................................................40

**Statutes**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1333 ...............................................................................................1

28 U.S.C. § 1367 ...............................................................................................1

33 U.S.C. § 2717 ...............................................................................................1

**Rules**

Fed. R. Civ. P. 33(b)(3) ...................................................................................23

Fed. R. Civ. P 26(a)(1)(iii) ....................................................................... 22, 23

Fed. R. Civ. P. 59 ..................................................................................... *passim*

## STATEMENT OF JURISDICTION

The district court had jurisdiction under the Oil Pollution Act of 1990, 33 U.S.C. §2717, as well as 28 U.S.C. §1331, and 28 U.S.C. §1333. ROA.29512, 29645. The district court had supplemental jurisdiction over Park National's state-law claims under 28 U.S.C. §1367. ROA.29512, 29645.

This Court has jurisdiction over Park National's appeal under 28 U.S.C. §1291. The district court entered its Order on the MDL Docket dismissing Park National's claims on July 10, 2018. ROA.2269-2270; *see also* ROA.29500 (entering same Order on the docket in 2:13-cv-2862 on July 16, 2018). Park National timely filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) on July 18, 2018. ROA.21059. The Rule 59(e) motion was denied in an order entered on November 29, 2018. ROA.21441-21452. Park National timely filed its notice of appeal on December 21, 2018. ROA.21493-21494.

## ISSUES PRESENTED

1.      Whether the district court abused its discretion when it dismissed with prejudice Park National's claims for failing to timely submit a sworn statement answering four questions which Park National had previously answered in submissions to BP years earlier?

2.      Whether the district court abused its discretion when it denied Park National's motion for reconsideration under Rule 59(e)?

## STATEMENT OF THE CASE

This matter arises from an April 20, 2010 incident, when the *Deepwater Horizon* drilling platform exploded and sank causing over 200 million gallons of crude oil from the Macondo Well, MC-252, to spill into the Gulf of Mexico. ROA.29509-29773. After multiple cases were consolidated into a multi-district litigation proceeding, MDL No. 2179, the district court created pleading bundles to manage the numerous claims—the B1 Bundle concerns non-governmental claims for loss of economic loss and property damages. ROA.29803.

During the pendency of the MDL proceedings, Park National participated in the claims settlement process with BP. ROA.21078-21079; ROA.27776-27777. As part of that process, Park National submitted a detailed multi-page description of each category of its claimed damages as well as the method by which the damages were calculated. ROA.27778-27784. Park National also provided a detailed explanation of how its damages were caused. ROA.27778-27784.

With this detailed explanation, Park National submitted over 1,600 pages of tax returns, financial statements, other financial records, and other materials in support of its claim. ROA.27785-29496.

After Park National submitted these extensive materials to BP and the Neutrals administering the claim settlement process, the district court entered pretrial order number 60 ("PTO 60") in March 2016. ROA.18383-18392. PTO 60 required B1 Claimants, like Park National, who had not settled with BP to either (1) file an individual complaint or (2) if the claimant had already filed its own complaint, file a sworn statement on a form attached to the order. ROA.18385-18386. As Park National had filed its own complaint in 2013, ROA.29642-29773, it filed the sworn statement by the deadline ordered by the district court. ROA.29854-29863.

On January 11, 2018, the district court issued Pretrial Order No. 65 ("PTO 65"), requiring all remaining B1 Plaintiffs to file verified statements regarding the causation and damages alleged in their individual cases by April 11, 2018. ROA.20581-20589, ROA.20582. The district court stated that "[t]his Pretrial Order No. 65 ("PTO 65") is designed to facilitate the Neutrals' process. Additionally, as to those B1 bundle cases that are not settled via the

4

Neutrals' process, this Pretrial Order serves as an important step toward bringing these cases to trial whether that ultimately occurs in this Court or following remand to the transferor district." ROA.20581. Unlike PTO 60, PTO 65 did not expressly state that failure to timely comply with the order would result in dismissal of claims. *Compare* ROA.18385 *with* ROA.20581-20584.

By its own terms, PTO 65 only applied to claimants who had previously complied with PTO 60. ROA.20582. Specifically, PTO 65 required each plaintiff with a pending B1 claim to sign a sworn statement answering four questions:

1. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of damage, and the calculations used to arrive at that amount.

2. Describe specifically the evidence you rely on to prove the damages you alleged in response to Question no. 1.

3. Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1

4. Do you have at this time an expert who will opine as to any of your response to the above questions?

ROA.20583, ROA.20584, ROA.20585-20589. PTO 65 also required that the plaintiff, not the plaintiff's attorney, sign and date the verification and attestation at the end of the form. ROA.20583.

Notably, PTO 65 itself does not expressly identify the specific plaintiffs who were obligated to submit the required statement. ROA.20581-20584. The docket entry for PTO 65 in MDL 2179 also does not identify the claimants subject to its requirements. ROA.2191. And PTO 65 was not entered under the 2862 case number for Park National's individual case (which the district court had previously required of B1 claimants under PTO 60). ROA.20581-20584, 29497-29500.

Rather, PTO 65 referred to claimants identified on two lists attached to a prior order denying certain claimants' motion to reconsider a 2017 pretrial order known as Pretrial Order 64. ROA.20582. Park National had not moved for reconsideration of Pretrial Order 64. ROA.20550. But Park National was included on the list attached to the order denying reconsideration of Pretrial Order 64. ROA.20568.

Due to the inadvertent error of its counsel Park National did not respond to PTO 65 by April 11, 2018. ROA.20622-20627.

On May 25, 2018, the district court issued an Order to Show Cause ("Show Cause Order") for 321 remaining B1 Plaintiffs who did not comply with PTO 65. ROA.20614-20615. Like PTO 65, the Show Cause Order was only filed under the MDL case number—it was not filed under the 2862 case number for Park National's individual case. ROA.2258, 29497-29500.

The Show Cause Order required Park National and the other claimants listed on the attached exhibits, to respond by June 15, 2018. ROA.20614-20615, 20627. Again, due to the inadvertent error of its counsel, Park National did not timely respond to the Show Cause Order.

On July 10, 2018, the district court issued its "PTO 65 Compliance Order." ROA.20926-20930. The district court held that "[a]s to those Remaining B1 Plaintiffs who were required to respond to the Show Cause Order but did not, the Court dismisses their B1 claims with prejudice for failing to comply with PTO 65." ROA.20927. Park National was included within this group. ROA.20942. Notably, Park National was dismissed for failing to comply with PTO 65, not for failing to respond to the Show Cause Order. ROA.20927.

That said, other claimants who failed to comply with PTO 65 by not filing the required sworn statement by April 11 due to the inadvertence of their counsel, but who did respond timely to the Show Cause Order and provided the sworn statement required by PTO 65 in June 2018, still had their claims dismissed for failing to meet the April 2018 deadline. For example, Roderic and Barbara Wright, along with Destin Development, LLC, missed the April 11 deadline, but submitted the required sworn statement in response to the Show Cause Order. ROA.20681-20684, 20782-20785, 20860-20863. But the district court held that, "for essentially the reasons stated in BP's brief," their claims were dismissed with prejudice. ROA.20928.

The sole reason BP stated for why these claimants should have their claims dismissed with prejudice is that the court should not excuse even "unintentional untimeliness by represented parties in these proceedings" and the court had previously dismissed the claims of other B1 plaintiffs who failed to comply with PTO 60 or PTO 64. ROA.20918-20919. In other words, BP's argument (which the district court followed) was that if a party was represented by counsel, the failure to timely file the PTO 65 sworn statement

8

meant that the party's claim should be dismissed with prejudice with no opportunity to cure the untimeliness.

Park National's counsel first learned of the July 10 PTO 65 Compliance Order on July 12, 2018, when he received a forwarded e-mail in another case he was handling for a different bank that notified him of the district court's dismissal of Park National, ROA.21077. Upon discovering Park National's case had been dismissed, Park National's counsel determined they had received notice of PTO 65 on January 25, 2018, and the Show Cause Order on May 25, 2018 through the general docket for the MDL. But Park National's counsel inadvertently overlooked its application to Park National's claims. ROA.21077-21078.

Six days after the district court dismissed Park National's claims, Park National filed a motion for reconsideration under Rule 59(e). ROA.21059. Park National filed in support of its motion (1) a memorandum in support, ROA.21061-21074, (2) the affidavit of its counsel, Wesley Bowden, ROA.21077-21080, and (3) an executed, verified PTO 65 sworn written statement. ROA.21082, 21083-21086. In its motion, Park National asked the district court to reconsider its decision and reinstate its claims because its

counsel's failure to respond to PTO 65 and the Show Cause Order was through inadvertence. ROA.21059, 21061. Park National further argued that relief under Rule 59(e) was warranted to prevent a "manifest injustice." ROA.21064-21068.

In its supporting affidavit, Park National's counsel explained that (1) he had been involved in resolving over 90 cases filed in the MDL on behalf of claimants who had either opted out or were excluded from the Economic and Property Damages Settlement Class, (2) he had handled claims in which he was personally involved and for which he was personally responsible competently and with respect for the Court's Pretrial and Case Management Orders, (3) he had drafted Park National's presentment and complaint after having worked with retained experts and bank auditors who assisted in quantifying Park National's losses, and (4) he had participated extensively in the Neutral's process to try and resolve Park National's claims. ROA.21077-21080.

Park National's counsel further noted that, through the Neutrals Process, as well as through its previously submitted presentment, complaint, and Park National's sworn statement, "[i]n essence, all of the information

10

required by PTO 65 was disclosed to the Neutrals during the course of our discussions." ROA.21079. Park National's counsel also explained, "The information required by PTO 65 had been disclosed previously to BP as through Presentment and the Complaint." ROA.21079.

BP Exploration and Production, Inc., and BP America Production Company ("BP") opposed Park National's motion for reconsideration. ROA.21425-21436. BP argued only that Park National had not met Rule 59's standards for reconsideration and that the lack of prejudice to BP was irrelevant. ROA.21428-21429. Notably, BP did not argue that the district court's prior dismissal of Park National's claims was correct. ROA.21425-21436. Nor did BP address the "manifest injustice" basis for reconsideration under Rule 59(e) on which Park National relied in its motion. ROA.21425-21436.

The district court denied Park National's request for reconsideration. ROA.21441-21452. The district court's reasoning was that:

> The Buzbee Law Firm (on behalf of multiple plaintiffs), Estate of William Patrick Kinser, Beach Community Bank, Park National Corporation, and Mark Canfora do not present any arguments that warrant reconsidering, altering, amending, or vacating the PTO 65 Compliance Order or otherwise reinstating their claims.

Their motions are denied for essentially the reasons advanced by BP. The Court further notes that the Fifth Circuit has affirmed, in published and unpublished opinions, dismissal for failure to comply with Pretrial Order No. 60, which preceded PTO 65. *See In Re: Deepwater Horizon (Barrera), 907 F.3d 232 (5th Cir. 2018)*; *In Re: Deepwater Horizon (Perez)*, 713 F. App'x 360 (5th Cir. 2018) (unpublished).

ROA.21449-21450.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion when it dismissed with prejudice the claims of Park National due to the inadvertent error of its counsel who missed that Park National was required to file with the Court a two-page form with four questions regarding Park National's claims for damages and causation. It is undisputed that Park National missed the deadline due to the inadvertence of its counsel and that when counsel learned of the missed deadline, it filed the required form within less than a week. Moreover, neither BP nor the district court have identified any prejudice to BP or the progress of the case caused by Park National's late submission of the PTO 65 statement due to the inadvertence of counsel, not Park National. In fact, Park National had previously provided BP with far

more extensive information regarding its claims for damages and causation than PTO 65 required to be submitted.

These facts cannot justify the extreme sanction imposed by the district court—dismissal with prejudice. Whether PTO 65 is treated as a discovery order or a docket-management order, dismissal is warranted only if there is a clear record of delay or contumacious conduct. Neither was present here. The record does not show a clear record of delay at all, let alone contumacious conduct. This Court has made clear that negligent conduct, no matter how careless, is not contumacious. Rather, conduct is contumacious only when the conduct shows stubborn resistance to authority. The record here shows only that counsel made an inadvertent mistake, which it worked to remedy as soon as it learned of the missed deadline.

These facts alone render dismissal an abuse of discretion regardless of how one characterizes PTO 65. But for purposes of sanctions, PTO 65 should be treated as a discovery order rather than a docket management order. Unlike other pretrial orders which governed how claims were to be asserted so that there was a consistent and uniform method by which claims could be

asserted, PTO 65 simply required certain B1 claimants to provide verified answers to four questions that are indistinguishable from typical interrogatories or information required in Rule 26(a) initial disclosures.

Under the standards governing sanctions for discovery violations, the dismissal cannot stand. Under this Court's precedent, violations of discovery orders can lead to dismissal of claims only when the violation is attributable to the party, not its counsel, and when the opposing party was actually prejudiced by the violation. Neither of these factors are present in this case. Neither BP nor the district court suggested the conduct was attributable to Park National or that there was any prejudice. Rather, BP argued below that these factors simply had no relevance.

Additionally, to the extent the Court limits review to the order denying the motion for reconsideration (and not the dismissal order itself), the district court abused its discretion in not finding that manifest injustice would arise from dismissing Park National's claims under the facts of this case. The district court's order denying the motion to reconsider only pointed to the reasons stated by BP in its opposition as why it was denying the motion. But BP did not address the manifest injustice standard. Rather,

14

it focused on the other three grounds under which Rule 59(e) relief can be granted.

But in any event, the Court should review the dismissal order itself and not look only at the order denying reconsideration. In prior cases where claimants in the same MDL intentionally refused to comply with the district court's order, the Court reviewed the dismissal decision itself. Park National, whose failure to timely file its sworn statement under PTO 65 was due to inadvertence, should not be held to a more stringent standard than those who undoubtedly knew what the district court required and made the conscious decision to not comply.

### STANDARD OF REVIEW

A district court's order that dismisses with prejudice a party's claims for failure to comply with a docket-management order or for failure to comply with a discovery order is reviewed for an abuse of discretion. *In re Deepwater Horizon (Graham)*, 2019 WL 1894704, at *2 (5th Cir. Apr. 29, 2019) (docket management order); *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (discovery order). And while district courts receive "special deference in the context of an MDL" when it comes to docket management, the district

15

court's discretion is limited when it comes to the sanction of dismissal due to its extreme nature. *Graham*, 0219 WL 1894704, at *2.

A motion to alter or amend a judgment under Rule 59(e) includes a motion for reconsideration. *Harrel v. Dixon Bay Transp. Co.*, 718 F.2d 123, 125 (5th Cir. 1983) (motion for reconsideration, seeking withdrawal of judgment, is a motion to alter or amend judgment under rule 59(e); FED. R. CIV. P. 59(e). This Court "generally reviews a decision on a motion to alter or amend judgment under Rule 59(e) for abuse of discretion. To the extent that a ruling was a reconsideration of a question of law, however, the standard of review is de novo." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 721–22 (5th Cir. 2013) (internal quotation marks and citations omitted).

## ARGUMENT

**I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DISMISSED WITH PREJUDICE PARK NATIONAL'S CLAIMS.**

The district court abused its discretion when it dismissed with prejudice Park National's claims in its July 10, 2018 order. It is undisputed that Park National failed to submit the sworn statement required by PTO 65 until about three months after the court-ordered deadline for the statement

16

to be filed. But it is also undisputed that the untimely filing was due to an inadvertent error of counsel who had prosecuted more than 90 other cases on behalf of other B1 claimants and who had consistently pursued Park National's claims in accordance with the district court's prior pretrial orders. It is likewise undisputed that in prior submissions to BP, Park National had provided concise explanations in a seven-page memorandum that described its damages and how the damages were calculated, as well as describing Park National's basis for causation – which were the precise questions PTO 65 required claimants to answer. Along with that memorandum, Park National provided over 1,600 pages of materials that supported its damages and causation claims. And it is undisputed that upon discovering its error, Park National's counsel submitted the required PTO 65 form less than a week after learning of the dismissal order.

Nor has the district court or BP identified any prejudice to the MDL's progress or to BP by allowing the late filing. Simply put, neither the district court nor BP has provided any reason for why Park National should have its claims dismissed with prejudice other than the fact that Park National's counsel did not learn of its inadvertent error until two days after the district

court had dismissed Park National's claims.  But whether the dismissal is reviewed under the standards governing dismissal as a sanction for non-compliance with a discovery order or the standards governing docket-management orders, the facts in this case fall far short of those under which the extreme sanction of dismissal with prejudice is warranted.

### A. The District Court's Dismissal Order Should Be Reviewed as a Dismissal for Failure to Comply with Discovery Order and Not a Case Management Order.

A threshold legal issue is whether the district court's sanction of dismissal with prejudice should be considered as a sanction for violating a discovery order or a sanction for violating a docket-management order.  As explained below, Park National is entitled to reversal under either standard.  That said, because the discovery-order standard expressly distinguishes the conduct of the party from the conduct of the party's counsel and also requires that there be substantial prejudice to the opposing party before dismissal is warranted,[1] reversal is particularly warranted if the discovery order standard applies.

---

[1] *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).

But even if the docket-management-order standard applies—which focuses on whether there was a clear record of delay or contumacious conduct and only treats the existence of prejudice as an aggravating factor[2]—Park National should still prevail.

### 1. The Standards Governing Dismissal for Violating Discovery Orders and Docket-Management Orders.

Before a district court may dismiss a claim with prejudice as a sanction for violating a discovery order, the court must not only find "willfulness or bad faith" combined with "a clear record of delay or contumactious conduct," it must also find that the violation is attributable to the client and not the attorney and that the opposing party was substantially prejudiced by the violation. As this Court has explained:

> [S]everal factors [must be present before a district court may dismiss a case with prejudice as a sanction for violating a discovery order: (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;" (2) the violation of the discovery order must be attributable to the client instead of the attorney, (3) the violating party's misconduct "must substantially prejudice the opposing party;" and (4) a less drastic

_____

[2] *In re Deepwater Horizon (Graham)*, _F.3d_, 2019 WL 1894704, at *2 (5th Cir. Apr. 29, 2019); *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 235 and 235 n.1 (5th Cir. 2018).

sanction would not substantially achieve the desired deterrent effect.

*Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir. 2013) (quoting *Doe v. Am. Airlines*, 283 F. App'x 289, 291 (5th Cir. 2008) (per curiam) (quoting *Conner*, 20 F.3d at 1380–81)).  These factors must be present because dismissal with prejudice is a "severe sanction that implicate[s] due process" and it thus is a "remedy of last resort" that "should be used as a lethal weapon only under extreme circumstances."  *Conner*, 20 F.3d at 1380.

Dismissals for failure to comply with docket-management orders are subject to the standard governing dismissal under Rule 41(b). *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 235 n.1 (5th Cir. 2018).  As in the case of discovery orders, this Court has acknowledged that dismissal for violation of a docket-management order is "an extreme sanction that deprives the litigant of the opportunity to pursue the claim" and thus this Court "has limited the district court's discretion in dismissing cases with prejudice. *Graham*, 2019 WL 1894704, at *2 (quoting *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)).

And, like the standard for discovery-order violations, dismissal with prejudice for violation of a docket-management order requires a finding of "a clear record of delay or contumacious conduct by the plaintiff" and that "lesser sanctions would not serve the best interests of justice." *Barrera*, 907 F.3d at 235.

But in the context of sanctions for the violation of a docket-management order (unlike in the context of sanctions for the violation of a discovery order), whether conduct is attributable to the party rather than its counsel and whether the defendant was actually prejudiced by the claimant's conduct are considered aggravating factors. *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) (describing the "aggravating factors" as "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct.") (quoting *Rogers v. Kroger*, 669 F.2d 317, 320 (5th Cir. 1982)). While "aggravating factors must 'usually' be found," they are not required for a claim to be dismissed with prejudice. *Sealed Appellant*, 452

F.3d at 418 (quoting *Rogers*, 669 F.2d at 320); *see also Barrera*, 907 F.3d at 235

n.1.[3]

> ## 2. Dismissal for Failing to Timely Comply with PTO 65 Should Be Reviewed under the Discovery-Order Standard.

The essential nature of PTO 65 was to require claimants to answer four

interrogatories from the district court, even though PTO 65 was not, on its

face, an order compelling discovery. Because the nature of a court's order is

determined not by its form, but by its substance, *cf. Edwards v. City of*

*Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc), the Court should treat

PTO 65 as akin to a discovery order compelling answers to four

interrogatories.

When one reviews the four questions that PTO 65 required to be

answered by claimants and verified under oath, the questions are easily

recognizable as the types of information required in Rule 26(a) initial

disclosures and regularly sought in interrogatories under Rule 33. *See* Fed.

---

[3] *Tello v. Comm'r*, 410 F.3d 743, 745 (5th Cir. 2005) ("We generally will affirm a dismissal only if we find at least one of three aggravating factors"); *Berry*, 975 F.2d at 1191 ("Additionally, in most cases where this Court has affirmed dismissals with prejudice, we found at least one of three aggravating factors.")

R. Civ. P 26(a)(1)(iii) (requiring "a computation of each category of damages claimed by the disclosing party"); *ATD Combustors, LLC v. Ameritube, LLC,* 2019 WL 1921615, at *2 (W.D. Tex. Jan. 23, 2019) (holding claimant adequately answered an interrogatory stating, "Explain the factual and legal bases supporting your claim for 'Lost Profits and damages from breach of Contract' in the amount of $ 5,478,000.00 USD, as alleged in Defendant Ameritube's Initial Disclosures ... including all elements of your claimed damages," by providing a five-part breakdown of how claimant calculated its alleged damages and by providing specifics as to the cause of each form of damages).

And like an interrogatory under Rule 33, the PTO 65 statement was to be verified under oath by the party. *Compare* ROA.20581-20583 (requiring parties to answer questions in writing and verify their answers under oath) *with* Fed. R. Civ. P. 33(b)(3) (requiring that interrogatories "be answered separately and fully in writing under oath").

To be sure, this Court in two recent decisions reviewing dismissals under PTO 60 and PTO 63 has applied the docket-management standard (which is borrowed from the standards governing involuntary dismissal

23

under Rule 41(b) for whether dismissal is warranted). *In re Deepwater Horizon (Graham)*, —F.3d—, 2019 WL 1894704, at *2 (5th Cir. Apr. 29, 2019) (reviewing dismissal of claims for violations of PTO 63); *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 234-235 (5th Cir. 2018) (reviewing dismissal of claims for violation of PTO 60).

But PTO 60 and PTO 63 are distinguishable from PTO 65. PTO 60 required B1 claimants to actually file individual complaints or for those who had already filed their own complaints to submit a sworn statement from the party that it was pursuing its claim in its previously filed complaint. The purpose of PTO 60 was to both streamline proceedings by having all the remaining claims in the MDL filed in the same manner and to ensure that an attorney was not pursuing a fraudulent claim on behalf of a non-existent party. PTO 63 imposed similar requirements on a different group of claimants known as B3 claimants.

Unlike PTO 60 and PTO 63, PTO 65 only asked parties who had already complied with PTO 60 to describe in detail their damages, how those damages were calculated, the basis for their causation arguments, and whether the parties had retained experts. As noted above, PTO 65

essentially asked claimants who had already complied with PTO 60 to provide verified answers to four questions that required the claimant to describe in detail their damages calculation and theory of causation.

Moreover, PTO 65 made clear that it was "designed to facilitate the Neutrals' [settlement] process." ROA.20581. While PTO 65 went on to say that as to cases not settled in the Neutrals' process, the order "serves as an important step to bringing these cases to trial," ROA.20581, the order simply required existing parties to answer specific court-ordered questions regarding causation and damages that are indistinguishable from what one would see in a typical set of interrogatories in any tort case. Unlike PTO 60, 63, and other pretrial orders, which had a fundamental goal of managing how claims were to be asserted and imposed requirements to ensure that claims were being brought on behalf of real litigants, PTO 65 simply sought to flesh out the existing claims of parties who had participated in the process and complied with prior pretrial orders. In short, PTO 65 was no different in substance from an order compelling a plaintiff to respond to interrogatories regarding damages and causation. The only difference here

25

was the court issued the interrogatory rather than compelled answer to ones served by a defendant.

**B.     The District Court Abused Its Discretion Under Either the Discovery-Order Standard or the Case-Management Order Standard.**

### 1.     Discovery-Order Standard

Under the discovery-order standard, it is unquestionable that the district court abused its discretion. This is because none of the *Conner* factors are present in this record.

First, there is no evidence that Park National's failure to timely respond to PTO 65 was due to "willfulness or bad faith" combined with "a clear record of delay or contumacious conduct." *Moore*, 735 F.3d at 316. Here, the uncontroverted evidence is that—unlike the district court's order dismissing Park National's claims which was entered on the docket for Park National's individual case—PTO 65 and the Show Cause Order were only filed in the MDL docket and Park National's counsel failed to timely respond to them due to an inadvertent error. There is no evidence of willfulness or bad faith. In fact, the record shows that Park National had timely presented its claim, filed an individual complaint, participated extensively in the claim-

resolution process, had previously provided BP and the Neutrals a detailed calculation of its damages and description of causation as well as over 1,600 pages of supporting documents, and had filed timely the sworn statement required by PTO 60. There is no evidence of any conduct by Park National done willfully or in bad faith.

Second, there is not a clear record of delay or contumacious conduct. The only delay here was that Park National submitted its executed PTO 65 about three months after the deadline set forth in PTO 65. And again, the reason for the untimely submission was due to the error of Park National's counsel. Upon discovering the error, Park National submitted the sworn statement required by PTO 65 within less than a week. There was no clear record of delay.

This conduct is exactly the opposite of contumacious conduct; "contumacious" means "[a] willful disobedience of a court order." *Graham*, 2019 WL 1894704, at *2. This Court has explained that "it is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is 'the stubborn resistance to authority' which justifies a dismissal with prejudice." *McNeal*

*v. Papasan,* 842 F.2d 787, 792 (5th Cir. 1988) (quoting *John v. Louisiana*, 828 F.2d 1129, 1131-32 (5th Cir. 1987)). In other words, for conduct to be contumacious there must be "an obstinate disrespect for the judicial process." *Id.*

Third, there is no evidence the failure to comply timely with PTO 65 is attributable to Park National rather than its counsel. In fact, the uncontroverted evidence shows precisely the opposite. Within less than a week after counsel learned of its mistake, Park National had signed and filed the statement required by PTO 65.

Fourth, there is no evidence that BP suffered any prejudice, let alone substantial prejudice. Nor has BP pointed to any such prejudice. In fact, in response to Park National's motion, BP (and apparently the district court) took the position that whether it was prejudiced by the untimely submission was irrelevant.

Similarly, BP and the district court took the position that whether the untimely filing was attributable to the conduct of counsel rather than Park National was irrelevant. Moreover, BP and the district court took this position even as to claimants represented by counsel who due to their

counsel's error missed the April 11 deadline under PTO 65 but submitted their sworn statement on or before the show-cause deadline in June 2018.

Fifth, the district court failed to consider whether a lesser sanction would substantially achieve the necessary deterrent effect. For example, the district court could have made clear that while it is allowing the untimely submission in this case, it will not excuse any future violations of subsequent pretrial orders by Park National. Given that the untimely response to PTO 65 was due to the error of counsel, such a sanction would necessarily provide the necessary deterrent effect on counsel and ensure close and vigilant monitoring of the MDL docket going forward, thus preventing any future delays or non-compliance.

### 2. Docket-Management-Order Standard

Even if the Court applies the standard governing when a claim can be dismissed for violating docket management orders, the district court abused its discretion in dismissing Park National's claims. This is because there is no clear record of delay or contumacious behavior by Park National justifying dismissal of its claims for its untimely submission of its PTO 65

statement. Nor is there any finding that lesser sanctions would not have served the interests of justice.

A district court's dismissal with prejudice for violation of a docket-management order requires "a clear record of delay or contumacious conduct by the plaintiff" and a finding that "lesser sanctions would not serve the best interests of justice." *Barrera*, 907 F.3d at 235. As noted above, for conduct to be contumacious, it cannot be based on negligence no matter how careless. Rather, there must be a "stubborn resistance to authority" reflecting "an obstinate disrespect for the judicial process," which justifies a dismissal with prejudice. *McNeal*, 842 F.2d at 792.

As explained at length in prior sections there was no clear record of delay or a stubborn resistance to authority. Rather, the record shows that Park National failed to timely respond to PTO 65 due to the inadvertence of counsel. The record does not reflect any other instance of where Park National engaged in any attempt to delay proceedings. Nor did Park National stubbornly resist the district court's authority. In fact, the record shows precisely the opposite. Upon discovering its failure to timely submit the statement required by PTO 65, Park National and its counsel remedied

the error in less than a week and filed the sworn statement required by PTO 65.

Moreover, the record shows that Park National's counsel had diligently and competently represented many other B1 Claimants in this underlying MDL. Park National's counsel has been involved in over ninety cases brought by other B1 claimants who opted out or were excluded from the Deepwater Horizon Economic and Property Settlement Class. ROA.21078. Of those, seventeen were banking claimants. *Id*. Park National's counsel also developed a causation model for the banking claimants, and consulted and retained experts and former bank auditors to assist in quantifying the banks' losses. *Id*.

Park National has met, worked and communicated with BP and the appointed Neutrals in an effort to resolve its claims. *Id.* In their initial meeting, Park National explained to the Neutrals how the sum stated in Plaintiff's Presentment was derived, including a description of the methodology utilized to quantify its damages, dates of when the damages were sustained, specific evidence relied upon in formulating the damages,

and a description of the causal link between the Macondo Well and Park National's injuries under the Oil Pollution Act. ROA.21078-21079.

Although Park National was unable to resolve its claims with BP during the first Neutrals settlement process, substantial progress was made. ROA.21078. The work and progress made on Park National's claims have demonstrated its strong commitment to resolving its claims and working within the framework set up by the district court. Despite this, the district court failed to consider that Park National—on the whole—has not only complied with the district court's orders but shown its desire to reach a resolution.

The district court also failed to consider lesser sanctions against Park National. Lesser sanctions would have served the best interests of justice. *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366, 368 (5th Cir. 1967); *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970) (determining that the appellant's conduct provided the court with several opportunities to discipline him for failing to obey the district court's directives).

The district court could have imposed lesser sanctions that would have deterred any future violations of pretrial orders. For example, as noted

above, once Park National filed the sworn statement required by PTO 65, the court could have entered an order that going forward the court would not permit or tolerate any missed deadlines and the failure to comply with a deadline in the future, absent extraordinary circumstances, would be grounds for immediate dismissal. In other words, the court could have deterred future mistakes by making clear (after Park National and its counsel learned of its error) that no future errors would be tolerated. The district court should not have punished Park National with the extreme sanction of a dismissal with prejudice without first considering lesser alternatives.

Moreover, while the presence of an aggravating factor is not required before a district court can order dismissal, *Barrera,* 907 F.3d at 235 n.1, there is usually at least one such factor present when a case is dismissed with prejudice as a sanction. *Tello*, 410 F.3d at 745. But in this case there are none.

First, Park National's counsel—not Park National—received PTO 65 and the Show Cause Order. ROA.21077. Park National relied on its counsel to comply with the district court's orders. ROA.21078. In other words, Park

National is not at fault for its counsel's inadvertence in failing to comply with PTO 65 and the Show Cause Order. ROA.21077-21078.

Despite the fact that Park National did not know of the district court's requirements under PTO 65 and the Show Cause Order, once it did learn of its non-compliance it immediately executed the required sworn statement under PTO 65 and it was filed with the court within a week. ROA.21059, ROA.21061-21073, ROA.21077-21080, ROA.21082-21086.

Second, as noted above BP did not suffer any actual prejudice. Park National had previously disclosed and supplied BP with over seventeen hundred pages of supporting documents through Plaintiff's Presentment, including tax returns, balance sheets, financial statements, and other documents. ROA.21066. Park National also provided detailed discussions, analyses, and methodologies of its banking activities and business profile— information that the district court's PTO 65 sought. *Id.*

Third, Park National's non-compliance with PTO 65 and Show Cause Order were clearly unintentional. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 557 (5th Cir. 1981) (finding that although the plaintiffs, through counsel, missed several deadlines that were "inexcusable," there was an

unclear record of delay or contumacious conduct and no consideration of alternative sanctions). Excluding PTO 65 and the Show Cause Order, the evidence shows that Park National's counsel has handled this litigation responsibly and competently by ensuring that Park National complied with the district court's pre-trial and case management orders. ROA.21061-21074, ROA.21078-21079, ROA.29584.

Finally, this Court's recent decisions in *Barrera* and *Graham* do not support the district court's dismissal of Park National's claims in this case. As this Court made clear the appellants in *Barrera* and the Lindsay appellants in *Graham* were both fully aware of the Court's deadline to take certain actions under PTO 60 and PTO 63. *Barrera*, 907 F.3d at 235-236; *Graham*, 2019 WL 1894704, at *3. And, in both cases, those appellants intentionally and consciously chose to disregard those deadlines. *Barrera*, 907 F.3d at 235-236; *Graham*, 2019 WL 1894704, at *3. Thus, it is quite understandable why this Court would find no abuse of discretion in *Barrera* and *Graham*. But in this case there simply is no evidence of contumacious conduct or a clear record of delay. Rather, Park National immediately attempted to comply with PTO

65 within just a few days of when its counsel discovered that it needed to file the statement required by PTO 65.

### C. The Court Should Review the District Court's Dismissal Order Itself and Not Solely the Order Denying Park National's Rule 59(e) Motion.

Finally, while Park National first responded to PTO 65 and the Show Cause Order after dismissal of its claims when it filed its motion for reconsideration, the Court should review the July 10 dismissal order itself and not limit its review solely to the denial of the motion to reconsider. In other cases arising out of the same MDL, the Court has reviewed dismissals of claims for failure to comply with pretrial orders even when the party whose claims was dismissed failed to submit documents by the district court's deadline and filed a motion for reconsideration after dismissal.

For example, in this Court's recent decision in *Graham*, the "Lindsay Appellants" obtained an extension of time to file its complaint under PTO 63 and then "failed to file anything by the new deadline" and "did nothing." *Graham*, 2019 WL 1894704, at *3. Despite having failed to comply with the extended deadline and the appellants having made the apparent conscious decision to do nothing prior to dismissal of their claims, this Court still

reviewed the dismissal order itself under the standard set forth in *Sealed Appellan*t and *Barrera.* *Id.* The Court did not limit itself to reviewing the denial of the appellants' motion for reconsideration. *Id.* Similarly, in *Perez*, where certain claimants filed class action complaints after the entry of PTO 60, which barred class action complaints, and then failed to comply with numerous chances to file single-plaintiff cases, this Court reviewed the dismissal order itself and did not limit its review to the Rule 59 motion for reconsideration that was filed. *In re Deepwater Horizon (Perez)*, 713 F. App'x 360, 362-363 (5th Cir. 2018).

Just as in *Graham* and *Perez*, which reviewed the dismissal orders themselves (and not just the orders denying post-judgment motions to reconsider) when claimants failed to timely comply with the district court's pretrial orders, the Court should do the same here and review the sanction order of dismissal itself. If anything, direct review of the dismissal order itself, and not just the order denying reconsideration, is more warranted in this case than in *Graham* or *Perez.* In both of those cases, it was undisputed that the claimants knew of the Court's order and failed to timely comply and then moved to reconsider the dismissal after its claims were dismissed. Park

National, on the other hand, was unaware of the deadline imposed by PTO 65 and the Show Cause Order. It would be a strange result if a party who knew of a deadline and intentionally ignored it and then moved to reconsider post-dismissal was entitled to a review of the dismissal itself while a party who did not comply with a deadline due to inadvertence could not obtain review of the sanction order itself and was only entitled to review of the order denying its motion to reconsider.

## II. ALTERNATIVELY, THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DENIED PARK NATIONAL'S MOTION FOR RECONSIDERATION.

If the Rule 59(e) standards governing reconsideration do apply, which they do not, then the Court should reverse the denial of reconsideration because the district court abused its discretion in denying Park National's motion. In the district court, Park National argued that it was entitled to relief under Rule 59(e), which authorizes district courts to alter or amend a judgment to avoid manifest injustice. Neither BP nor the district court (who merely adopted BP's arguments) ever acknowledges, let alone, addressed manifest injustice under Rule 59(e).

Rule 59(e) allows a district court to correct judgments based on "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law *or prevent manifest injustice.*" *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) (emphasis added); *see also Fahquhar v. Steen*, 611 F. App'x 796, 800 (5th Cir. 2015) ("Relief under Rule 59(e) requires a showing of (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear legal error or to prevent manifest injustice."(quoting *In re Benjamin Moore & Co.*, 318 F.3d at 629)); *Arrieta v. Local 745 Int'l Bhd. Of Teamsters*, 445 F. App'x 760, 762 (5th Cir. 2011) (same); *McGillivray v. Countrywide Home Loans, Inc.*, 360 F. App'x 533, 537 (5th Cir. 2010) (same).

Park National expressly stated that it was relying on the "manifest injustice" standard in its Rule 59(e) motion. Although this Court has not provided an explicit definition of manifest injustice, courts "evaluate whether there has been a manifest injustice on a case-by-case basis." *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 2017 WL 3582385, at *5 (E.D. La. Aug. 18,

2017) (citing *Alvarado v. Texas Rangers*, 2005 WL 1420846, at *3 (W.D. Tex. June 14, 2005)).

Moreover, in deciding a Rule 59(e) motion, a district court must strike the "proper balance between two important judicial imperatives: (1) the need to bring litigation to an end; and (2) the need to render just decisions on the basis of all the facts." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). This Court has tasked the lower courts with considering and balancing these imperatives when evaluating Rule 59(e) motions. *Id.* In this case, the record shows that dismissal without prejudice was a manifestly unjust result in this case and the district court failed to undertake the necessary balancing of interests.

Park National's counsel thoroughly explained why it missed the deadlines for PTO 65 and the Show Cause Order, furnished a verified PTO 65 Sworn Statement, and provided sworn, uncontroverted evidence that it had worked previously with BP and the Neutrals in an effort to resolve Park National's claims. ROA.21059, ROA.21061-21074, ROA.21077-21080, ROA.21082-21086.

Park National consistently exhibited a willingness to resolve its claims after expending resources, time, and money and should not be punished simply because its counsel missed two interrelated deadlines. The district court's decision to follow BP's suggestion that there was a manifest error and that the inadvertence of counsel and the lack of prejudice to BP are irrelevant gives improper and outsized weight to the unintentional mistakes of Park National's counsel.

Park National's claims should not end because its counsel missed a deadline when the missed deadline was the result of an unintentional, isolated incident. When one sees how Park National prosecuted its claims from 2013 through 2018, it is clear that Park National properly pursued its claims and followed the district court's directives along the way as well as made good-faith efforts to resolve its claims. To the extent that this Court finds that the district court did balance the imperatives, the district court abused its discretion by weighing the need for finality much more heavily than the need to render a just decision based on the facts presented.

## CONCLUSION

Park National respectfully requests that the district court's decision dismissing its claims with prejudice and the order denying its motion for reconsideration be vacated or reversed and that the case be remanded for further proceedings.

Respectfully Submitted,

/s/ Wesley A. Bowden
Wesley A. Bowden
**LEVANTINO, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
Tel: 850-435-7186
Fax: 850-436-6186
Email: wbowden@levinlaw.com

/s/ Marc S. Tabolsky
Marc S. Tabolsky
**SCHIFFER HICKS JOHNSON PLLC**
700 Louisiana, Suite 2650
Houston, Texas 77002
Tel: 713-357-5150
Fax: 713-357-5160
Email: mtabolsky@shjlawfirm.com

*Attorneys for Appellants*

**CERTIFICATE OF SERVICE**

In accordance with the Federal Rules of Appellate Procedure, I hereby

certify that on May 15, 2019, a true and correct copy of the above and

foregoing Brief of Appellants was duly and properly served on all counsel

of record by the Electronic Service Provider for the Court as follows:

R. Alan York
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, TX 77002
AYork@ReedSmith.com

*Attorneys for Halliburton Energy Services, Inc.; and Sperry Drilling
Services, a division of Halliburton Energy Services, Inc.*

Kerry J. Miller
Daniel John Dysart
**FISHMAN HAYGOOD, L.L.P.**
201 Saint Charles Avenue, Suite 4600
New Orleans, LA 70170
kjmiller@fishmanhaygood.com
ddysart@fishmanhaygood.com

*Attorneys for Transocean Offshore Deepwater Drilling, Inc., Transocean
Deepwater, Inc., Transocean Holdings, LLC, and Triton Asset Leasing,
GMBH*

Don K. Haycraft
Devin C. Reid
Russell Keith Jarrett
**LISKOW & LEWIS LLP**
701 Poydras Street, Suite 5000
New Orleans, LA 70139
dkhaycraft@liskow.com
dcreid@liskow.com
rkjarrett@liskow.com

Andrew Langan
Matthew T. Regan
Martin R. Martos II
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
andrew.langan@kirkland.com
matthew.regan@kirkland.com
martin.martos@kirkland.com

George W. Hicks, Jr.
Aaron L. Nielson
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, DC 20005
george.hicks@kirkland.com
aaron.nielson@kirkland.com

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP, P.L.C.*

/s/ Wesley A. Bowden
Wesley A. Bowden

44

1.      This brief complies with the type-volume limitation of Fed. R. App. P 32(a)(7)(B) because it contains 7,769 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Book Antiqua 14-point font, except that the footnotes are in 13 point font as permitted by Fifth Circuit Rule 32.1.

/s/ *Wesley A. Bowden*
Wesley A. Bowden
Attorney for Appellants

Dated: May 15, 2019