# In the United States Court of Appeals for the Fifth Circuit

## No. 18-31292

IN RE: DEEPWATER HORIZON

PARK NATIONAL CORPORATION, and its wholly owned entities and subsidiaries including; VISION PARK PROPERTIES, L.L.C.; SE PROPERTY HOLDINGS, L.L.C., individually and as successor in interest to; VISION BANK,

PLAINTIFFS – APPELLANTS

V.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRITON ASSET LEASING GMBH; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated, formerly known as Sperry Sun Drilling Services,

DEFENDANTS – APPELLEES

_____

## CONSOLIDATED WITH NO. 19-30001

IN RE: DEEPWATER HORIZON

DESTIN DEVELOPMENT, L.L.C.,

PLAINTIFF – APPELLANT

V.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated, formerly known as Sperry Sun Drilling Services,

DEFENDANTS – APPELLEES

_____

RODERIC WRIGHT,

PLAINTIFF – APPELLANT

V.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, Halliburton division, formerly known as Sperry Sun Drilling Services,

DEFENDANTS – APPELLEES

————————

BARBARA WRIGHT,

PLAINTIFF – APPELLANT

V.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated,

DEFENDANTS – APPELLEES

On Appeal from the U.S. District Court for the Eastern District of Louisiana
Nos. MDL 2179, 2:13-cv-834, 2:13-cv-1091, 2:13-cv-2420, 2:13-cv-2862

## BRIEF OF BP APPELLEES

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000

George W. Hicks, Jr.
Aaron L. Nielson
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

*Counsel for BP Appellees*

June 28, 2019

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**BP APPELLEES:**

The BP Appellees are BP p.l.c., BP Exploration & Production Inc., BP America Production Company (hereinafter "BP").

**ATTORNEYS FOR BP APPELLEES:**

Matthew T. Regan, P.C.  
J. Andrew Langan, P.C.  
Kirkland & Ellis LLP  
300 North LaSalle Street  
Chicago, IL 60654  
(312) 862-2000

George W. Hicks, Jr.  
Aaron L. Nielson  
Kirkland & Ellis LLP  
1301 Pennsylvania Ave., N.W.  
Washington, DC 20004  
(202) 389-5000

**OTHER APPELLEES:**

The Transocean Appellees are Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., and Transocean Holdings, Inc. The Halliburton Appellees are Halliburton Energy Services, Inc. and Sperry Drilling Services. The Triton Appellee is Triton Asset Leasing GMBH.

**ATTORNEYS FOR OTHER APPELLEES:**

R. Alan York
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002
(713) 469-3824

*Attorney for Halliburton Appellees*

Kerry J. Miller
Fishman Haygood, LLP
201 St. Charles Ave., 46th Floor
New Orleans, LA 70170
(504) 556-5549

Daniel John Dysart
Baker, Donelson, Bearman,
    Caldwell & Berkowitz, P.C.
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5206

*Attorneys for Transocean Appellees and the Triton Appellee*

**APPELLANTS:**

The Park National Appellants are Park National Corporation and its wholly owned entities and subsidiaries including, Vision Park Properties, L.L.C. and SE Property Holdings, L.L.C., individually and as successor in interest to Vision Bank. The Destin Appellants are Destin Development, L.L.C., Roderic Wright, and Barbara Wright.

**ATTORNEYS FOR THE PARK NATIONAL APPELLANTS (NO. 18-31292):**

Wesley A. Bowden
Levin, Papantonio, Thomas,
    Mitchell, Echsner & Proctor P.A.
316 South Baylen St., Suite 600
Pensacola, FL 32502
(850) 435-7186

Marc S. Tabolsky
Schiffer Hicks Johnson PLLC
700 Louisiana, Suite 2650
Houston, Texas 77002
(713) 357-5150

**ATTORNEYS FOR THE DESTIN APPELLANTS (NO. 19-30001):**

Tucker H. Byrd
Byrd Campbell
180 Park Avenue, North, Suite 2a
Winter Park, FL 32789
(407) 392-2285

Robert L. Sirianni, Jr.
Brownstone, P.A.
P.O. Box 2047
Winter Park, FL 32790
(407) 388-1900

s/ *George W. Hicks, Jr.*
Attorney for BP Appellees

# STATEMENT REGARDING ORAL ARGUMENT

BP p.l.c., BP Exploration & Production Incorporated, BP America Production Company ("BP") respectfully submit that oral argument is unnecessary to resolve these appeals. This Court has repeatedly upheld the district court's broad discretion to enforce its pre-trial orders in this complex multi-district litigation by dismissing noncompliant plaintiffs with prejudice. Those decisions and other decisions of this Court readily apply to appellants' disregard of the district court orders here, and they compel affirmance of the judgments below without the need for oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS..................................................i

STATEMENT REGARDING ORAL ARGUMENT ................................... iv

TABLE OF CONTENTS ...................................................................... v

TABLE OF AUTHORITIES...............................................................vii

INTRODUCTION .............................................................................1

STATEMENT OF JURISDICTION ..................................................3

STATEMENT OF ISSUES ................................................................3

STATEMENT OF THE CASE AND FACTS ...................................3

    A.    MDL 2179 and Judge Barbier's Initial Pre-Trial Orders..........3

    B.    The MDL Settlements and Judge Barbier's Recent Pre-Trial Orders ........................................................................6

    C.    PTO 65 and Subsequent Orders................................................10

    D.    Appellants' Claims................................................................14

SUMMARY OF ARGUMENT.........................................................18

STANDARD OF REVIEW ...............................................................24

ARGUMENT....................................................................................25

I.    The District Court Did Not Abuse Its Discretion By Dismissing The Destin Appellants' Claims With Prejudice ...........26

    A.    Judge Barbier Did Not Base His Decision on an Erroneous Factual Finding........................................................28

B.     Judge Barbier Did Not Abuse His Discretion By Failing to Conduct an "Excusable Neglect" Analysis Under *Pioneer*.......................................................................30

C.     Judge Barbier Did Not Abuse His Discretion By Failing to Excuse the Destin Appellants' Noncompliance With PTO 65 ..................................................................34

II.    The District Court Did Not Abuse Its Discretion By Dismissing The Park National Appellants' Claims With Prejudice.........................................................................43

A.     Judge Barbier Did Not Abuse His Discretion in Denying The Park National Appellants' Rule 59(e) Motion, the Only Order Properly Before This Court.............43

B.     Even If The Court Considers the Dismissal Order, Judge Barbier Did Not Abuse His Discretion in Dismissing the Park National Appellants' Claims With Prejudice .................................................................49

C.     The Park National Appellants' Remaining Arguments Lack Merit.......................................................................58

CONCLUSION..................................................................................62

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Rossotti,*
 277 F.3d 1373 (5th Cir. 2001) ...................................................................... 52, 56

*Bateman v. U.S. Postal Service,*
 231 F.3d 1220 (9th Cir. 2000) ........................................................................42

*Brittingham v. Wells Fargo Bank, N.A.,*
 543 F. App'x 372 (5th Cir. 2013) ..................................................................35

*Bynum v. Ussin,*
 410 F. App'x 808 (5th Cir. 2011) ..................................................................37

*Callip v. Harris Cty. Child Welfare Dep't,*
 757 F.2d 1513 (5th Cir. 1985) ........................................................................57

*Castleberry v. CitiFinancial Mortg. Co. Inc.,*
 230 Fed. Appx. 352 (5th Cir. 2007) ..............................................................35

*Cinel v. Connick,*
 15 F.3d 1338 (5th Cir. 1994) ..........................................................................28

*Cowart v. Ingalls Shipbuilding,*
 192 F.3d 126 (5th Cir. 1999) ..................................................................... 38, 42

*Ctr. for Biological Diversity, Inc. v. BP,*
 704 F.3d 413 (5th Cir. 2013) ............................................................................3

*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,*
 6 F.3d 350 (5th Cir. 1993) ......................................................................... 35, 36

*Estes v. U.S. Truck Inc.,*
 252 F.3d 1355 (5th Cir. 2001) ........................................................................25

*Garcia v. Woman's Hosp. of Tex.,*
143 F.3d 227 (5th Cir. 1998) ..................................................................24

*Halicki v. La. Casino Cruises, Inc.,*
151 F.3d 465 (5th Cir. 1998) ..................................................................36

*Hernandez v. Univ. of Tex.-Pan Am.,*
729 F. App'x 340 (5th Cir. 2018) ..........................................................36

*In re Benjamin Moore & Co.,*
318 F.3d 626 (5th Cir. 2002) ..................................................................47

*In re Deepwater Horizon (Action Restoration),* Order, No. 17-30936
(5th Cir. Apr. 18, 2018) ............................................................................8

*In re Deepwater Horizon (AJ's Specialty),*
752 F. App'x 197 (5th Cir. 2019) ............................................................8

*In re Deepwater Horizon (Barrera),*
907 F.3d 232 (5th Cir. 2018) ......................................................... *passim*

*In re Deepwater Horizon (Cepeda),*
765 F. App'x 980 (5th Cir. Mar. 18, 2019) ..................................... 10, 60

*In re Deepwater Horizon (Graham),*
922 F.3d 660 (5th Cir. 2019) .......................................................... *passim*

*In re Deepwater Horizon (Perez),*
713 F. App'x 360 (5th Cir. 2018) ................................... 8, 24, 26, 33

*In re Deepwater Horizon,*
731 F. Supp. 2d 1352 (J.P.M.L. 2010) ....................................................4

*In re Deepwater Horizon,*
819 F.3d 190 (5th Cir. 2016) ............................................................ 1, 26

*In re Pettle,*
410 F.3d 189 (5th Cir. 2005) ..................................................................35

*In re Pollak*,
223 F. App'x 309 (5th Cir. 2007) ............................................................ 41, 42

*In re Vioxx Prods. Liab. Litig.*,
509 F. App'x. 383 (5th Cir. 2013) ...............................................................60

*Koerner v. CMR Constr. & Roofing, L.L.C.*,
910 F.3d 221 (5th Cir. 2018) ......................................................................47

*Mastronardi v. Wells Fargo Bank*,
653 F. App'x 356 (5th Cir. 2016) ........................................................... 46, 57

*Matter of Life Partners Holdings, Inc.*,
___ F.3d ___, 2019 WL 2315028 (5th Cir. May 31, 2019) ...............................47

*Moore v. CITGO Refining & Chems. Co., LP*,
735 F.3d 309 (5th Cir. 2013) ......................................................................56

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) ....................................................................................57

*Northshore Dev., Inc. v. Lee*,
835 F.2d 580 (5th Cir. 1988) ........................................... 25, 28, 32, 34

*Piney Woods Country Life Sch. v. Shell Oil Co.*,
905 F.2d 840 (5th Cir. 1990) ......................................................................28

*Pioneer Investment Services Co. v. Brunswick Associates*,
507 U.S. 380 (1993) ........................................................................... *passim*

*Rayford v. Karl Storz Endoscopy Am., Inc.*,
740 Fed. App'x 435 (5th Cir. 2018) ....................................... 34, 35, 42

*Rogers v. City of Warren*,
302 F. App'x 371, 376 (6th Cir. 2008) ........................................................46

*Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563 (5th Cir. 2003) ......................................................................46

*Sealed Appellant v. Sealed Appellee,*
  452 F.3d 415 (5th Cir. 2006) .................................................................57

*Simon v. United States,*
  891 F.2d 1154 (5th Cir. 1990) ................................................................45

*Templet v. HydroChem Inc.,*
  367 F.3d 473 (5th Cir. 2004) .......................................................... 45, 47

*Texas v. Alabama-Coushatta Tribe of Tex.,*
  918 F.3d 440 (5th Cir. 2019) .......................................................... 25, 45

*United States v. Martinez-Leon,*
  689 F. App'x 355 (5th Cir. 2017) ..........................................................47

*United States v. Sparks,*
  2 F.3d 574 (5th Cir. 1993) .....................................................................47

*United States v. Velasco,*
  855 F.3d 691 (5th Cir. 2017) .................................................................25

*Walker v. City of Mesquite,*
  402 F.3d 532 (5th Cir. 2005) .................................................................25

**Statutes**

28 U.S.C. § 1291 ........................................................................................3

28 U.S.C. § 1331 ........................................................................................3

28 U.S.C. § 1332 ........................................................................................3

28 U.S.C. § 1333 ........................................................................................3

33 U.S.C. § 2717 ........................................................................................3

43 U.S.C. § 1349 ........................................................................................3

**Rules**

Fed. R. Civ. P. 59....................................................................................... *passim*

Fed. R. Civ. P. 60....................................................................................... *passim*

**Other Authorities**

PTO 66, *available at*
  http://www.laed.uscourts.gov/sites/default/files/OilSpill/04092018Pre
  trialOrder66_0.pdf ..........................................................................14

PTO 67, *available at*
  http://www.laed.uscourts.gov/sites/default/files/OilSpill/2.5.2019.Pre
  trial%20Order%2067_0.pdf..............................................................14

Judge Carl Barbier of the Eastern District of Louisiana has been tasked with the "herculean" role of overseeing the *Deepwater Horizon* Multi-District Litigation. *In re Deepwater Horizon (Graham)*, 922 F.3d 660, 664 (5th Cir. 2019). In order to manage what is almost certainly the largest MDL in history—one of "epic" proportions, *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016)—Judge Barbier has issued a series of pretrial orders (PTOs). This Court, in turn, has repeatedly upheld the validity of those PTOs and, importantly, affirmed that if parties disobey them, Judge Barbier may dismiss their claims with prejudice. Indeed, since 2018, the Court has affirmed this aspect of Judge Barbier's case-management discretion on six separate occasions. These appeals, which concern yet another of these PTOs, present the Court with an opportunity to reaffirm Judge Barbier's authority for a seventh time.

In particular, these appeals concern PTO 65, which gave plaintiffs three months to provide information to Judge Barbier about their claims and to attest to the truthfulness of their alleged damages. By design, PTO 65 builds on PTOs that this Court has already reviewed and upheld, including PTO 60 (requiring economic-loss plaintiffs to file sworn

statements about their claims and to file individual complaints), PTO 63 (requiring the same of spill-recovery plaintiffs), and PTO 64 (requiring economic-loss plaintiffs to provide information about maritime claims). For each of these PTOs, Judge Barbier dismissed with prejudice the claims of noncompliant plaintiffs. And this Court, with one minor exception not applicable here, affirmed in all of these cases, repeatedly stressing the "special deference" that is "required in the context of an MDL." *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 235 (5th Cir. 2018).

The same outcome is warranted here. After the Destin Appellants (No. 19-30001) failed to comply with PTO 65, they proffered various excuses for their noncompliance ranging from the implausible to the now-abandoned. Judge Barbier examined those grounds and acted well within his discretion in deeming them insufficient to avoid dimissal with prejudice. The Park National Appellants (No. 18-31292) failed to comply with both PTO 65 *and* a subsequent show cause order. Judge Barbier likewise acted well within his discretion in dismissing their claims. Before this Court, neither set of Appellants provides any sound basis for disturbing Judge Barbier's decisions. The judgments should be affirmed.

2

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1333, 33 U.S.C. § 2717(b), and 43 U.S.C. § 1349(b). Although state claims are preempted, the district court also could consider them under 28 U.S.C. § 1332. This Court, in turn, has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether Judge Barbier abused his discretion by dismissing the Destin Appellants' claims with prejudice.

2. Whether Judge Barbier abused his discretion by dismissing the Park National Appellants' claims with prejudice.

## STATEMENT OF THE CASE AND FACTS

### A.    MDL 2179 and Judge Barbier's Initial Pre-Trial Orders.

The *Deepwater Horizon* was a mobile offshore drilling unit owned and operated by Transocean Ltd. ("Transocean"). BP hired Transocean to drill the Macondo Well in the Gulf of Mexico and Halliburton Energy Services, Inc. ("Halliburton") to provide the cement. On April 20, 2010, a blowout occurred, causing an oil spill. The well was later sealed. *See, e.g., Ctr. for Biological Diversity, Inc. v. BP*, 704 F.3d 413, 418-20 (5th Cir. 2013).

Thousands of lawsuits were filed. The Judicial Panel on Multidistrict

Litigation responded by creating MDL 2179 and assigning it to Judge Barbier of the Eastern District of Louisiana. *See In re Deepwater Horizon*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010). Judge Barbier promptly began organizing MDL 2179 by issuing PTOs, a number of which are relevant here.

PTO 1. On August 10, 2010, Judge Barbier issued PTO 1, which "relates to all cases." ROA.19-30001.2364-2365. PTO 1 provides that in addition to each case's individual docket, the court clerk would "maintain a master docket file" where most documents would henceforth be lodged. ROA.19-30001.2370. It also creates a public website that "will contain … court orders … and other relevant information."[1] Finally, PTO 1 provides that for any subsequent suit made part of the MDL, the clerk would "[f]ile a copy of this Order" on that case's individual docket. ROA.19-30001.2371-2372.

PTO 11. On October 19, 2010, Judge Barbier issued PTO 11. ROA.19-30001.2427. Among other things, PTO 11 grouped the many individual cases into "pleading bundles" to account for different types of claims. As relevant here, the "B1 Bundle" covers claims for "Economic Loss and

---

[1] The website is located at http://www.laed.uscourts.gov/ OilSpill/OilSpill.htm.

Property Damages" by private individuals and businesses. ROA.19-30001.2429. The "B3 Bundle" covers claims for oil-spill responders. ROA.19-30001.2429. Each pleading bundle would have its own "Master Complaint" to facilitate resolution of common issues. ROA.19-30001.2428-2429. All individual actions would remain stayed.

PTO 12. On October 25, 2010, Judge Barbier issued PTO 12. ROA.19-30001.27111. Designed "to facilitate case management," PTO 12 requires all parties to "utilize the services of LexisNexis File & Serve ('File & Serve')" for "providing electronic service, storage and delivery of court-filed and discovery related documents." ROA.19-30001.27111. Specifically, it requires "[a]ll attorneys of record," within ten days of the order or "ten days of the entry of appearance for a new attorney of record," to "sign up for electronic service … by completing the application" for File & Serve. ROA.19-30001.27112. PTO 12 explains that File & Serve will "send an e-mail to all registered users notifying them" of any newly filed document and provide multiple ways for obtaining that document (*e.g.*, e-mail delivery, web site posting, etc.). ROA.19-30001.27113. It also advises that "service of Court Orders … shall be accomplished electronically through File & Serve," and it explicitly warns that "[a]ttorneys who fail to register"

will not "receive service of documents filed in the MDL." ROA.19-30001.27116-271117.

To date, thousands of lawyers in MDL 2179 have complied with PTO 12 and registered for File & Serve. Lawyers can also find Judge Barbier's orders via PACER. All PTOs, moreover, are placed on the public *Deepwater Horizon* website. And in *every* suit filed as part of MDL 2179—including the suits here—PTOs 1, 11, and 12 are automatically placed on that suit's *individual* docket shortly after the complaint is filed. *E.g.*, ROA.19-30001.26944.

## B.  The MDL Settlements and Judge Barbier's Recent Pre-Trial Orders.

In 2012, BP entered into two class settlements: one for economic-loss and property-damage claims (the "E&P Settlement") and another for medical claims. Halliburton and Transocean followed suit in 2014 and 2015, respectively. Judge Barbier approved these settlements. BP also entered into other settlements with other private plaintiffs and with government entities. *E.g.*, ROA.19-30001.1484-1485.

Although these class settlements have resolved many MDL claims—for example, the E&P Settlement alone has resolved nearly 400,000 claims

from over 250,000 unique claimants, ROA.19-30001.21503—they have not resolved all of them. Some plaintiffs, for instance, opted out of the settlements, and other claims were not settled because they would not be amenable to class-wide resolution. In fact, at the beginning of 2016—after Judge Barbier had devoted several years to overseeing litigation resulting in the various settlements—there were over 85,000 plaintiffs nominally remaining in the MDL. MDL 2179, Dkt. 15820 (Feb. 1, 2016). To facilitate resolution of the still-extraordinary number of pending claims, Judge Barbier issued additional PTOs relevant to this appeal.

PTO 60. On March 29, 2016, Judge Barbier issued PTO 60. ROA.19-30001.18759. Its purpose was to identify remaining B1 plaintiffs with viable claims who wished to proceed. PTO 60 thus required all remaining plaintiffs to identify themselves with a "sworn statement" and, if they were part of a multiple-plaintiff complaint, to refile individually. ROA.19-30001.18761. Most plaintiffs obeyed. For those who did not, however, Judge Barbier issued a show cause order and, on December 16, 2016, an order dismissing with prejudice the claims of parties who did not comply with PTO 60. ROA.19-30001.19897.

Various plaintiffs appealed their dismissals with prejudice for

noncompliance.  This Court rejected their arguments in a series of decisions and orders.  *See Barrera*, 907 F.3d at 235 (noting the "special deference required in the context of an MDL"); *In re Deepwater Horizon (Perez)*, 713 F. App'x 360, 362 (5th Cir. 2018) (noting that "[t]he court has broad discretion and inherent authority to manage its docket," including "the power to dismiss a case for a party's failure to obey the court's orders"); *In re Deepwater Horizon (Action Restoration)*, Order at 7, No. 17-30936 (5th Cir. Apr. 18, 2018) (summarily affirming because parties did not "compl[y] with PTO 60"); *In re Deepwater Horizon (AJ's Specialty)*, 752 F. App'x 197 (5th Cir. 2019) (summarily affirming).

PTO 63.  On February 22, 2017, Judge Barbier issued PTO 63, which was materially identical to PTO 60—*i.e.*, it required each plaintiff to file a sworn statement and file an individual complaint—except that it covered B3 claims rather than B1 claims.  ROA.19-30001.20415.  As with PTO 60, Judge Barbier dismissed with prejudice those plaintiffs who were noncompliant with PTO 63, although he did not issue an intervening show cause order before dismissal.

Those dismissals led to two appeals—one by the "Lindsay Appellants," and the other by the "D'Amico Appellants."  The Lindsay

Appellants had not filed anything timely in response to PTO 63. The D'Amico Appellants, by contrast, had filed sworn statements by the deadline but not the individual complaints, because the Plaintiffs' Steering Committee (a group of lawyers appointed by Judge Barbier) had advised them that this was unnecessary. This Court affirmed the dismissal of the Lindsay Appellants. *See Graham*, 922 F.3d at 666-67. The Court reversed the dismissal of the D'Amico Appellants, however, after explaining that they (1) had at least timely filed sworn statements (rather than filing nothing at all); and (2) had failed to file the required individual complaints only because they had received and relied on erroneous guidance from the PSC. *Id.* at 668.

PTO 64. On February 22, 2017, the district court issued PTO 64. ROA.19-30001.20225. PTO 64 ordered all B1 plaintiffs remaining after PTO 60 who wished to pursue maritime claims to file a "sworn statement" indicating whether the plaintiff "owned or otherwise held a proprietary interest in property that was physically damaged by oil" or "worked as a commercial fisherman in or near the Gulf of Mexico at the time of the oil spill." ROA.19-30001.20227. As with PTO 60 and 63, noncompliant plaintiffs were dismissed with prejudice, and some of those plaintiffs

9

appealed. This Court again affirmed, reiterating that MDL courts enjoy "special deference" over their dockets, that the district court had "warned" that noncompliance would result in dismissal with prejudice, and that lesser sanctions would "further delay the district court's efforts to adjudicate the MDL expeditiously." *In re Deepwater Horizon (Cepeda)*, 765 F. App'x 980, 982 (5th Cir. Mar. 18, 2019) (citing *Barrera*, 907 F.3d at 235-37).

### C. PTO 65 and Subsequent Orders

This appeal concerns Judge Barbier's next PTO, PTO 65, which was issued on January 11, 2018. ROA.18-31292.20581. PTO 65 is of a piece with PTOs 60 and 64; it is yet another step toward managing the sprawling MDL 2179 docket and facilitating resolution of the many B1 claims that still remain in the MDL. It applied to "Remaining B1 Plaintiffs," defined as those B1 plaintiffs who complied with PTOs 60 and 64. PTO 65 began by encouraging the remaining parties to work with court-appointed mediators called "Neutrals" to resolve remaining claims. Then, both to "facilitate the Neutrals' process" and, for cases not settled via the Neutrals' process, to "serve[] as an important step toward bringing these cases to trial," PTO 65 required Remaining B1 Plaintiffs to "provide sworn answers to four questions concerning damages and causation":

1. Describe specifically the compensatory damages that you claim in your lawsuit, including the nature of the damage, the date(s) of the damage, the amount of the damage, and the calculations used to arrive at that amount.

2. Describe specifically the evidence you rely on to prove the damages you allege in response to Question no. 1.

3. Describe specifically how the Deepwater Horizon/Macondo Well incident and oil spill caused the damages you allege in response to Question no. 1.

4. Do you have at this time an expert who will opine as to any of your responses to the above questions?

ROA.18-31292.20583.

PTO 65 stated that this information will "aid in the further administration of the Remaining B1 Plaintiffs" by allowing the court "to understand the type and scope of the damages and causation alleged by" those plaintiffs. ROA.18-31292.20582. The order explained that although plaintiffs may have previously provided similar information, those presentments "were made several years ago" and thus "do not necessarily represent the actual damages each Remaining B1 Plaintiff seeks" or "explain how the plaintiff alleges that the damages sought were causally related to" the *Deepwater Horizon* incident. ROA.18-31292.20582. PTO 65 underscored the importance of this information: **It is imperative that**

11

**plaintiffs provide responses that are as specific and accurate as practicable.**" ROA.18-31292.20581 (emphasis in original). And it required answers to be verified by the plaintiff under penalty of perjury and filed on the plaintiff's individual docket "no later than **April 11, 2018**"—three months away. ROA.18-31292.20583 (emphasis in original).

As with PTO 60 and 64, Judge Barbier made sure that PTO 65 was widely distributed. Pursuant to PTO 1 (an order filed on every individual docket), PTO 65 is found on the MDL 2179 docket. It is on the public *Deepwater Horizon* website established by PTO 1. And pursuant to PTO 12 (another order filed on every individual docket), every attorney registered with File & Serve—as every attorney is required to do, per PTO 12— received a copy. Finally, because PTO 65 was issued after PTOs 60, 63, and 64, counsel who practice *Deepwater Horizon* litigation and who had filed B1 claims were well aware that an additional order governing management of remaining claims might be forthcoming.

On May 25, 2018—over four months after PTO 65, and over a month after the April 11 deadline—Judge Barbier issued an "Order to Show Cause re: Compliance with PTO 65," similar to his show cause order following PTO 60. The order identified B1 plaintiffs "who made no PTO 65

12

submission at all," and it ordered them to "**show cause in writing on or before June 15, 2018**" why the Court should not dismiss their claims "**with prejudice**" for "**failing to comply with the requirements of PTO 65.**" ROA.19-30001.20865 (emphases in original).

On July 10, 2018, Judge Barbier issued the "PTO 65 Compliance Order." Judge Barbier accepted the explanations of some noncompliant B1 plaintiffs and permitted their claims to proceed. But he dismissed the claims of other B1 plaintiffs whose explanations he found inadequate (including one set of Appellants here), as well as B1 plaintiffs who did not respond to the PTO 65 Show Cause Order (including another set of Appellants here). ROA.19-30001.21177-21178.

A number of plaintiffs moved for relief from the dismissal order. ROA.19-30001.21686. As before, Judge Barbier did grant relief for some plaintiffs after receiving their explanations. For other plaintiffs, however—including the Appellants here—he denied the motions. ROA.19-30001.21696.

Following PTO 65, Judge Barbier has issued two additional PTOs. PTO 66, issued on April 9, 2018, is similar to PTO 65 but directed at B3 plaintiffs. It requires "the Remaining B3 Plaintiffs to provide more

particularized information regarding their claims," and to attest to such material under penalty of perjury. PTO 66 at 1, *available at* http://www.laed.uscourts.gov/sites/default/files/OilSpill/04092018Pretrialorder66_0.pdf. As with PTO 65, Judge Barbier has dismissed with prejudice plaintiffs who did not comply with PTO 66. Some of them have appealed; briefing in this Court has not begun.

PTO 67, issued on February 5, 2019, is addressed to the B1 plaintiffs who remain after PTOs 60, 64, and 65, and is designed to continue moving B1 claims forward. ROA.19-30001.2234. It requires production of documents relating to spill-related losses and orders parties "to participate in good faith in a mandatory mediation." PTO 67 at 3, *available at* http://www.laed.uscourts.gov/sites/default/files/OilSpill/2.5.2019.Pretrial%20Order%2067_0.pdf.

### D. Appellants' Claims

There are two sets of Appellants before the Court: (1) the Destin Appellants (consisting of Destin Development, L.L.C.; Roderic Wright; and Barbara Wright); and (2) the Park National Appellants (consisting of Park National Corporation and its wholly owned entities and subsidiaries).

**The Destin Appellants**: Destin Development is a Florida real-estate development company owned by Roderic and Barbara Wright. In April 2013, Destin Development and the Wrights filed individual complaints in the Eastern District of Louisiana. ROA.19-30001.26946; ROA.19-30001.27187; ROA.19-30001.27425. The cases were assigned to MDL 2179. Barely one month after each complaint was filed, Judge Barbier placed PTOs 1, 11, and 12 on their individual dockets. ROA.19-30001.26944-26945; ROA.19-30001.27188-27189; ROA.19-30001.27426-27427. On December 29, 2017, Roderic Wright sought bankruptcy protection and listed his *Deepwater Horizon* claim as an asset. ROA.19-30001.21659.

After Judge Barbier issued PTO 65 in January 2018, the Destin Appellants failed to submit any response. In response to the show cause order, they claimed that they had changed counsel and that their new lawyer did not know about PTO 65 because he never registered for File & Serve and was "unaware" of PTO 12's requirement. ROA.19-30001.20933. On July 10, 2018, Judge Barbier dismissed their claims with prejudice. ROA.19-30001.21179.

On August 10, 2018, invoking Fed. R. Civ. P. 59 and 60—in particular, Rule 59(e) and Rule 60(b)(6)—the Destin Appellants filed a "Motion for

15

Relief" from the dismissal order.  ROA.19-30001.2275; ROA.19-30001.21626-21635.  In that motion, they specifically sought relief "on two grounds": first, their claim "actually remains the property of the Bankruptcy Estate"; and second, Judge Barbier's dismissal order "appears [to be] based upon the Court's conclusion that Plaintiff or counsel … had been scouring the docket in the MDL for a year and a half," when, in actuality, "Plaintiff and his lawyer were scouring the docket related to the independent action, not the MDL docket."  ROA.19-30001.21628-21629.  Later in their motion, the Destin Appellants reiterated these "two reasons" for vacating their dismissal.  *See* ROA.19-30001.21633-21634 ("First, the claim … is the property of the Bankruptcy Estate ….  Second, the Court's Order seems to be based upon a manifest error of fact[.]").

Judge Barbier denied the motion.  He explained that PTO 65 was served on all registered parties via File & Serve, PTO 12 required all attorneys to register for File & Serve, and PTO 12 "warned that attorneys who failed to register … would not receive documents filed in the MDL." Thus, "it was counsel's own fault" that he did not receive PTO 65.  ROA.19-30001.21689.  Furthermore, Judge Barbier explained, counsel's claim that he had been "diligently review[ing]" the individual dockets and thus did not

16

see PTO 65 (which was only on the master docket) was unavailing for two reasons. First, the individual dockets that "counsel claims to have diligently reviewed" contained other PTOs that would have led counsel to obtain PTO 65, including PTO 1 (establishing that "most filings" would be found on the master docket) and PTO 12 (requiring all counsel to register for File & Serve). Second, "counsel filed a Notice of Appearance in the master docket over a year before PTO 65 issued," showing that he "had actual … knowledge of the master docket." ROA.19-30001.21690.

Finally, Judge Barbier rejected the relevance of the bankruptcy trustee. If the trustee controlled the asset, "these are not the proper plaintiffs," and the trustee had "failed to appear and take the steps necessary to preserve and pursue these claims." ROA.19-30001.21690.

**The Park National Appellants**: Park National is "a financial holding company" that owns financial institutions, some of which operated in the Gulf Coast region. ROA.18-31292.29511-29522. The Park National Appellants filed a complaint on April 19, 2013 (ROA.18-31292.29642) and an amended complaint on April 25, 2013 (ROA.18-31292.29509) in the Northern District of Florida. Their suit was transferred into MDL 2179.

The Park National Appellants did not respond to PTO 65. When

17

Judge Barbier issued his PTO 65 Show Cause Order nearly five months later, the list of noncompliant plaintiffs explicitly included the Park National Appellants.  ROA.18-31292.20627.  Yet they did not respond to the Show Cause Order, either.  On July 10, 2018, six months after issuing PTO 65—with no response from the Park National Appellants in any respect— Judge Barbier dismissed their claims with prejudice.  ROA.18-31292.20942.

After having disregarded *both* PTO 65 and the PTO 65 Show Cause Order, the Park National Appellants moved under Fed. R. Civ. P. 59(e) to alter or amend the dismissal order.  ROA.18-31292.21059.  They conceded that they had received the two orders, but failed to respond to both "through inadvertence."  ROA.18-31292.21063.  On November 11, 2018, Judge Barbier denied the motion.  ROA.18-31292.21449-21450.

## SUMMARY OF ARGUMENT

**I.**  Judge Barbier did not abuse his substantial discretion in dismissing the Destin Appellants' claims for failure to comply with PTO 65. The Destin Appellants first contend that Judge Barbier's decision was based on the erroneous factual finding that they and their counsel were "diligently reviewing the MDL docket for a year and a half," when in fact, they were "diligently reviewing" the individual dockets.  But Judge Barbier

18

*acknowledged* that very factual premise. He went on to explain that this did not help the Destin Appellants and, indeed, was part of the problem: had they really been "diligently reviewing" the individual dockets, they would have found both PTO 1 and PTO 12, which were placed on those individual dockets and would have led to counsel obtaining PTO 65. Put simply, there was no factual error here, much less clear error.

The Destin Appellants next contend that Judge Barbier failed to analyze whether their conduct constituted "excusable neglect" under *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380 (1993), before dismissing their claims. But Appellants did not raise these arguments before dismissal. And in their post-dismissal motion for relief from judgment, although they noted *Pioneer* in passing, they expressly sought relief on "two grounds," neither of which was a *Pioneer*/"excusable neglect" argument: first, that their claims were actually held by the bankruptcy estate; and second, that Judge Barbier relied on a clearly erroneous factual finding. That post-dismissal motion, moreover, was specifically predicated on Rules 59(e) and 60(b)(6), neither of which encompasses "excusable neglect." Judge Barbier thus did not abuse his discretion in addressing (and rejecting) the precise "two grounds" upon

which Appellants sought post-judgment relief.

Finally, the Destin Appellants contend that the *Pioneer*/"excusable neglect" factors weigh in their favor. But even if they had properly raised that argument below under the correct rule—Rule 60(b)(1)—*Pioneer* provides no basis for relief, and certainly not under the abuse-of-discretion standard. *Pioneer* provides that "inadvertence, ignorance of the rules, or mistakes construing the rules" do not usually constitute "'excusable' neglect," 507 U.S. at 392, and this Court has repeatedly held that there is no abuse of discretion when a Rule 60(b)(1) "excusable neglect" motion is denied due to careless mistakes of counsel. Here, counsel committed numerous careless mistakes that led to noncompliance with PTO 65: failing to review PTO 1 and PTO 12 on the individual dockets; failing to check the master MDL docket (per PTO 1); failing to register with File & Serve (per PTO 12); failing to check the public *Deepwater Horizon* website; and so on. Indeed, this Court's cases hold that *granting* 60(b)(1) relief here would be an abuse of discretion.

In all events, the *Pioneer* factors do not favor the Destin Appellants. Their two months' delay in complying with PTO 65 is far longer than the *one-day* delay in the single case they cite from this Court finding excusable

neglect. Their reason for noncompliance is not credible and weak regardless; even under their own factual premise, there were numerous ways they could (and should) have received and complied with PTO 65. Noncompliance with PTO 65 hinders the MDL court's efforts to facilitate resolution of claims in this enormous litigation, prejudicing BP, plaintiffs who did comply, and the court itself. And although Appellants plead good faith, even Judge Barbier was rightly skeptical of their claims that they "diligently reviewed" the individual dockets.

**II.** Judge Barbier also did not abuse his substantial discretion in dismissing the claims of the Park National Appellants, who failed to comply with not one but *two* court orders—PTO 65 and the show cause order. As an initial matter, because the first (and only) time that the Park National Appellants sought relief from Judge Barbier was in their post-dismissal Rule 59(e) motion, and that was the first (and only) time Judge Barbier ruled on any of their arguments, the only order before this Court is Judge Barbier's denial of that motion. And for two separate reasons, Judge Barbier did not abuse his discretion in denying that motion.

First, a Rule 59(e) motion cannot be used to raise arguments that could, and should, have been made before judgment. But the Park

21

National Appellants repeatedly argued in their Rule 59(e) motion that their failure to comply was due to their counsel's inadvertence—precisely the kind of argument that they could, and should, have made before dismissal in response to the show cause order.

Second, the Park National Appellants did not identify any of the customary bases for Rule 59(e) relief, such as manifest errors of law or fact or newly discovered evidence. Instead, they claimed that dismissing their claims would produce a "manifest injustice." Even assuming that is a basis for Rule 59(e) relief, there was no manifest injustice here. Appellants failed to comply with two orders, including a show cause order. They blame their noncompliance on "inadvertence" but provide no further details, much less explain how disobeying *two* court orders—three months apart— can be "inadvertent." And, as noted, disobeying Judge Barbier's orders prejudices other parties to MDL 2179 and the court. Refusing to reinstate the Park National Appellants' claims thus is not unjust, much less "manifestly" unjust, especially under an abuse-of-discretion standard.

Even if this Court considers the dismissal order, and not merely the Rule 59(e) denial, Judge Barbier did not abuse his discretion, particularly given the special deference accorded to MDL judges. Dismissal with

prejudice requires (1) a clear record of delay or contumacious conduct, and (2) that no lesser sanctions are appropriate.  Both elements are present here.  There was a clear record of delay:  Appellants did not comply with PTO 65 until over six months after it was issued, and in the meantime disregarded an intervening show cause order and did not provide the court with any information explaining their reasons for noncompliance.  There was also contumacious conduct:  Appellants disobeyed multiple court orders (including a show cause order) despite indisputably receiving them, despite both orders unambiguously applying to them, despite an explicit warning of dismissal with prejudice for noncompliance, and despite knowing of Judge Barbier's prior dismissals for noncompliance with his PTOs.  Appellants' claim of unexplained "inadvertence" does not offset these overwhelming facts.  And as this Court has twice held as to other *Deepwater Horizon* PTOs, no lesser sanction would serve the best interests of justice.

Finally, there is no merit to the Park National Appellants' contention that PTO 65 is a discovery order, and thus Judge Barbier's dismissal order must be held to the standards applicable to discovery sanctions.  Appellants did not sufficiently raise this argument below, but it is both

incorrect and irrelevant regardless. It is incorrect because PTO 65 is plainly a case-management order designed to move the MDL along. It is irrelevant because this Court has held that dismissal due to noncompliance with discovery orders is not an abuse of discretion. Nor is there any merit to Appellants' claim that they already provided the information required by PTO 65. Appellants conceded below that their previous submissions did *not* cover all of the questions asked by PTO 65. In any event, those submissions were more than five years ago, and Judge Barbier issued PTO 65 to obtain current information.

## STANDARD OF REVIEW

"[A]ll matters of docket management and trial procedure" are reviewed for "abuse of … discretion." *Garcia v. Woman's Hosp. of Tex.*, 143 F.3d 227, 229 (5th Cir. 1998). A district court has "broad discretion and inherent authority to manage its docket," including "the power to dismiss a case for a party's failure to obey the court's orders." *Perez*, 713 Fed. App'x at 362. Moreover, because the ability "to enforce orders pertaining to the progress of … cases" is "most important" in MDL cases, a district court overseeing an MDL enjoys "special deference" in enforcing its deadlines. *Barrera*, 907 F.3d at 235.

24

A district court's factual findings are reviewed for clear error, *e.g.*, *Walker v. City of Mesquite*, 402 F.3d 532, 535 (5th Cir. 2005), which occurs only where "the court is left with the definite and firm conviction that a mistake has been committed," *United States v. Velasco*, 855 F.3d 691, 693 (5th Cir. 2017).

The denial of a motion under Fed. R. Civ. P. 59 or 60 is reviewed for abuse of discretion. *E.g.*, *Estes v. U.S. Truck Inc.*, 252 F.3d 1355, 1355 (5th Cir. 2001). Review of such denials is "highly deferential." *Texas v. Alabama-Coushatta Tribe of Tex.*, 918 F.3d 440, 447 (5th Cir. 2019). "It is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so *unwarranted* as to constitute an abuse of discretion." *Northshore Dev., Inc. v. Lee*, 835 F.2d 580, 582 (5th Cir. 1988).

## ARGUMENT

Judge Barbier did not abuse his discretion in dismissing with prejudice Appellants' claims. PTO 65 is a significant court order issued in a mature, exceedingly complex MDL. It provides Judge Barbier with up-to-date information that helps him manage the MDL and facilitate resolution of remaining claims, and it deters inaccurate or fraudulent claims. PTO 65 also works in conjunction with other PTOs: PTO 60 required B1 plaintiffs

to identify themselves and take steps to continue litigating; PTO 64 required B1 plaintiffs to detail any maritime claims; PTO 65 required B1 plaintiffs remaining after PTOs 60 and 64 to provide information about their damages; and PTO 67 requires plaintiffs remaining after PTOs 60, 64, and 65 to submit documents and participate in mediation.[2]

Judge Barbier's PTOs, including PTO 65, are thus a laudable effort to keep the trains running on time in this "epic" multi-district litigation. *In re Deepwater Horizon*, 819 F.3d at 197. They "streamline proceedings" and facilitate the orderly resolution of thousands of claims either through settlement or trial. *Barrera*, 907 F.3d at 236. Absent these orders and the court's ability to meaningfully enforce compliance with them, Judge Barbier's task would transform from merely "herculean," *Graham*, 922 F.3d at 664, to outright sisyphean.

## I. The District Court Did Not Abuse Its Discretion By Dismissing The Destin Appellants' Claims With Prejudice.

Judge Barbier did not abuse his "broad discretion" in dismissing the Destin Appellants' admitted failure to comply with PTO 65. *Perez*, 713 F. App'x at 362. It is undisputed that despite being given three months to

---

[2] As noted, Judge Barbier has instituted a similar series of PTOs covering other pleading bundles, such as B3 claims.

comply with PTO 65's "**imperative**" requirement to submit "**specific and accurate**" responses, the Destin Appellants submitted nothing at all. Then, when they offered a hodge-podge of excuses for why they failed to comply—including that their counsel had not obtained PTO 65 despite reviewing the individual dockets and that their claims belonged to the bankruptcy trustee—Judge Barbier rejected those arguments. Among other things, he explained that, per PTO 12 (filed in the individual dockets that counsel claimed to have been reviewing), all counsel were required to register with File & Serve to receive court orders; that per PTO 1 (also filed in the individual dockets), "most documents" were filed in the master MDL docket that counsel had failed to review; that counsel had filed a notice of appearance in the master docket, showing his knowledge of that docket; and that if the bankruptcy trustee held the claims, Appellants were not proper plaintiffs anyway. ROA.19-30001.21689-21690.

Particularly in light of the "special deference" accorded to MDL judges tasked with facilitating "efficient progress of … cases"—a goal that PTO 65 advanced, and that noncompliance "delay[ed]"—Judge Barbier's disposition was not an abuse of discretion. *Barrera*, 907 F.3d at 235. Far from "curtly dispens[ing] with Appellants' claims," Destin.Br.9, Judge

27

Barbier entertained their excuses and explained why he found them insufficient. Nothing in those denials was "so *unwarranted* as to constitute an abuse of discretion." *Northshore*, 835 F.2d at 582. Indeed, both after his show cause order and after motions for reconsideration, Judge Barbier did let *other* plaintiffs back into the case upon finding their explanations sufficient. *See* ROA.19-30001.21179; ROA.19-30001.21696. That he declined to reinstate the claims of the Destin Appellants demonstrates not an abuse of discretion but careful attention and consideration.

Before this Court, the Destin Appellants advance three reasons why Judge Barbier abused his discretion. None has merit.[3]

### A. Judge Barbier Did Not Base His Decision on an Erroneous Factual Finding.

The Destin Appellants first argue that Judge Barbier "appeared to base [his] decision on the erroneous fact that Appellants were diligently reviewing the MDL docket for a year and a half." Destin.Br.9. The Destin Appellants contend that, in actuality, their counsel "regularly checked the dockets in the Independent Actions, *not the main MDL docket*," and assert

---

[3] Having raised these three arguments in their opening brief, the Destin Appellants may not raise additional arguments in their reply brief. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *Piney Woods Country Life Sch. v. Shell Oil Co.*, 905 F.2d 840, 854 (5th Cir. 1990).

that Judge Barbier's reliance on this "clearly erroneous material fact" warrants reversal. *Id.* at 9-10.

But Judge Barbier did not operate under the mistaken belief that the Destin Appellants were reviewing only "the MDL docket." To the contrary, Judge Barbier acknowledged their contention that their counsel "diligently reviewed the individual dockets." ROA.19-30001.21690. Judge Barbier then determined that this did not excuse noncompliance; indeed, it was part of the problem, because review of the individual dockets should have led counsel to obtain PTO 65. That reasoning was entirely correct: Had counsel "diligently reviewed" the individual dockets, he would have obtained PTO 65—first, through PTO 1 (indicating that most filings would be on the MDL docket), and second, through PTO 12 (requiring all counsel to register with File & Serve to receive orders, such as PTO 65). Both orders were filed on the individual dockets—the very dockets that, as Judge Barbier noted, "counsel claims to have diligently reviewed." ROA.19-30001.21690.

In short, Judge Barbier did not make, much less rely on, an erroneous factual finding that the Destin Appellants' counsel were diligently reviewing the MDL docket. In reality, he acknowledged the factual

29

premise that they advanced—that counsel was diligently reviewing the individual dockets. The problem for Appellants is that Judge Barbier correctly concluded that this premise did not help them and in fact underscored why dismissal was appropriate.

**B.** **Judge Barbier Did Not Abuse His Discretion By Failing to Conduct an "Excusable Neglect" Analysis Under *Pioneer*.**

The Destin Appellants next contend that "[i]nstead of analyzing whether Appellants' conduct constituted excusable neglect under" *Pioneer*, Judge Barbier "simply dismissed Appellants' claims 'for essentially the reasons stated in BP's brief.'" *Id.* at 12 (quoting PTO 65 Compliance Order, ROA.19-30001.21179). Appellants assert that dismissal of their cases "should be reversed on this basis alone." *Id.* For several reasons, however, Judge Barbier did not abuse his discretion in this respect.

To begin, while the Destin Appellants accuse Judge Barbier of failing to apply *Pioneer* or the "excusable neglect" standard in his July 10 order dismissing their cases, Appellants *did not raise these arguments* to Judge Barbier prior to that order. The Destin Appellants' June 15, 2018 response to the show cause order does not even suggest an argument based on *Pioneer* or "excusable neglect." *See* ROA.19-30001.20932-20934. It is hardly

fair to criticize Judge Barbier for "failing to conduct any analysis" in his dismissal order of an argument not presented to him prior to that order.

Indeed, even in their "Motion for Relief" filed *after* the dismissal order, the Destin Appellants still only specifically sought relief from judgment "on two grounds":  first, that "the claim at issue actually remains the property of the Bankruptcy Estate"; and, second, that the dismissal order "appears based upon" an erroneous factual finding that Appellants' counsel was reviewing the MDL docket, when he actually was reviewing the individual dockets.  ROA.19-30001.21628-21629.  Later in that same motion, the Destin Appellants reiterated, "The Court should reconsider and vacate its Order … for two reasons":  "First, the claim … is the property of the Bankruptcy Estate," and "Second, the Court's Order seems based upon a manifest error of fact."  ROA.19-30001.21633-21634.  In turn, Judge Barbier addressed (and rejected) these "two reasons" in his order denying relief—exactly what one would expect.  That is not an abuse of discretion.

To be sure, in a single paragraph near the end of their motion, the Destin Appellants cited *Pioneer* and listed its four-factor test.  ROA.19-30001.21634-21635.  But this passing nod to *Pioneer* bore no resemblance to

31

the "two reasons" that Appellants had repeatedly invoked as the grounds

for vacating the judgment (the bankruptcy proceedings and clear factual

error), and Appellants themselves did not bother to explain *why* they

satisfied *Pioneer*'s four-factor test. It was not an abuse of discretion for

Judge Barbier to address and analyze the "two grounds" that Appellants

had twice explicitly identified as the specific "reasons" they were entitled

to relief, while not also explicitly addressing this passing, undeveloped

(and patently meritless, *see infra*) suggestion. That is especially so given

that Judge Barbier was simultaneously reviewing numerous motions for

relief. It was in no way "*unwarranted*" for him to focus his efforts on the

specific bases for relief that various movants had identified, and not every

passing comment in every motion. *Northshore Dev.*, 835 F.2d at 582.

Underscoring that Judge Barbier did not abuse his discretion, the

Destin Appellants specifically sought relief under Federal Rules of Civil

Procedure 59(e) and 60(b)(6). ROA.19-30001.21632 (citing rules and

standards). Neither of these provisions, however, permits relief based on

"excusable neglect." To be sure, Rule *60(b)(1)* allows a court to relieve a

party from a final judgment due to, *inter alia*, "excusable neglect." But

Appellants did not seek relief under Rule 60(b)(1), which is nowhere

mentioned in their filings below. The only Rule 60(b) provision they invoked was Rule 60(b)(6), which is "mutually exclusive" of Rule 60(b)(1) and has a different standard. *See Pioneer*, 507 U.S. at 393; n.6, *infra*.[4]

All told, (1) before their cases were dismissed, Appellants did not raise *Pioneer* or "excusable neglect" to justify their untimely PTO 65 response; (2) after their cases were dismissed, Appellants twice specifically identified "two grounds" for relief from the judgment, neither of which involved *Pioneer* or "excusable neglect"; and (3) Appellants' motion for relief explicitly invoked Rules 59(e) and 60(b)(6), neither of which allows for "excusable neglect" as a basis for relief. Under these circumstances, Appellants have arguably forfeited any *Pioneer*/"excusable neglect" argument here. *See, e.g.*, *Perez*, 713 F. App'x at 363 n.1 ("Waiver rules matter, even in complex cases."). But at the very least, the fact that Judge Barbier did not specifically address that argument—while addressing the "two grounds" that Appellants twice explicitly invoked for relief—was not

---

[4] Appellants' "Motion for Relief" is even more confusing because they invoked Rule 59(e) despite filing their motion after the applicable 28-day deadline. *See* Fed. R. Civ. P. 59(e). The dismissal order was dated July 10; the 28-day deadline was August 7, and Appellants filed on August 10. That the Destin Appellants failed to timely file a motion seeking relief from an order dismissing their cases for failure to timely file a response to PTO 65 is an irony that should not be lost upon the Court.

"so *unwarranted* as to constitute an abuse of discretion." *Northshore Dev.*, 835 F.2d at 582.[5]

### C. Judge Barbier Did Not Abuse His Discretion By Failing to Excuse the Destin Appellants' Noncompliance With PTO 65.

Last, the Destin Appellants contend that "the *Pioneer* factors weigh in favor" of concluding that their "failure to comply with PTO 65 was the result of excusable neglect." Destin.Br.12. But even if the Destin Appellants had properly made this argument under Rule 60(b)(1), Judge Barbier's decision was not an abuse of discretion.[6]

**1.** First and foremost, consistent with *Pioneer*'s admonition that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," 507 U.S. at 392, this Court has repeatedly held that a "district court does not abuse its discretion when it

---

[5] BP has already explained why the one of the "two reasons" invoked below—clear factual error—is unavailing. As for the second—the bankruptcy proceedings—the Destin Appellants have essentially abandoned that reason on appeal, mentioning it only in their statement of facts and devoting no portion of their argument to it. *See* Destin.Br.4-6.

[6] Under the provision that the Destin Appellants *actually* invoked, Rule 60(b)(6), their argument fails because Rule 60(b)(6) requires a party to "show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer*, 507 U.S. at 393. Even the Destin Appellants do not suggest that they or their counsel were "faultless" in their noncompliance. *Cf. Rayford v. Karl Storz Endoscopy Am., Inc.*, 740 Fed. App'x 435, 437 (5th Cir. 2018) ("Missing a deadline … is not an extraordinary circumstance.").

denies a Rule 60(b)(1) motion due to the 'careless mistake of counsel.'" *Rayford*, 740 F. App'x at 436-37 (quoting *Brittingham v. Wells Fargo Bank, N.A.*, 543 F. App'x 372, 374 (5th Cir. 2013)). And as the Court has also repeatedly held, "mistakes about deadlines qualify as a careless mistake of counsel." *Id.* at 437 (citing cases). "In fact," because it is "well-established" that "inadvertent mistake … ignorance of the rules, or ignorance of the law are insufficient bases for Rule 60(b)(1) relief," a district court "would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356-57 (5th Cir. 1993); *In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005); *see also Castleberry v. CitiFinancial Mortg. Co. Inc.*, 230 Fed. Appx. 352, 356 (5th Cir. 2007).

The Destin Appellants' failure to comply with PTO 65 was the result of their counsel's own "careless mistake"—many careless mistakes, in fact. He did not register for File & Serve, even though PTO 12 required this (and was placed on the individual dockets he claimed to have "diligently reviewed"). He did not monitor the master MDL docket, even though PTO 1 (also placed on the individual dockets) explained that most filings would

be lodged there. He did not bother to check the public *Deepwater Horizon* website (also discussed in PTO 1), where orders were also lodged. If anything, Judge Barbier would have committed reversible error if he *had* concluded that these quintessential "careless mistakes," culminating in the failure to timely comply with PTO 65's deadline, constituted "excusable neglect" under Rule 60(b)(1). *See Edward H. Bohlin*, 6 F.3d at 357.[7]

That Judge Barbier did not abuse his discretion is reinforced by the fact that the relevant PTOs are unambiguous. Where "the applicable rule is clear, the district court's conclusion that neglect was inexcusable is 'virtually unassailable.'" *Hernandez v. Univ. of Tex.-Pan Am.*, 729 F. App'x 340, 341 (5th Cir. 2018) (quoting *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998)). That is the case here. All counsel for the Destin Appellants had to do was read the crystal-clear PTOs 1 or 12, which Judge Barbier placed on the individual dockets, and he would have known to

---

[7] Counsel's carelessness is even more inexcusable given that the individual dockets contained the Destin Appellants' responses to PTO 60. *See* ROA. ROA.19-30001.26944; ROA.19-30001.27189; ROA.19-30001.27426. Those responses should have clued counsel (1) to the existence of recent PTOs and the possibility of additional ones like PTO 65; and (2) to the fact that these PTOs would be found not on the individual dockets but elsewhere, since PTO 60 itself was not on the individual dockets.

check the MDL docket or register for File & Serve, and thus would have obtained PTO 65, which itself is indisputably clear.[8]

Similarly, Judge Barbier gave everyone three months to comply with PTO 65—longer than under PTOs 60, 63, or 64. *See, e.g.*, *Bynum v. Ussin*, 410 F. App'x 808, 811 (5th Cir. 2011) (finding no abuse of discretion where counsel had "97 days to file"). Accordingly, even leaving aside their counsel's own mistakes, the Destin Appellants still had plenty of time to check the *Deepwater Horizon* webpage or the MDL docket for updates on their cases. That is also plenty of time for the Appellants and their counsel to have had discussions about any recent activity in the case—such as the filing of the PTO 60 statements—that would have prompted Appellants or counsel to check on additional activity.

**2.** The Destin Appellants do not even acknowledge, much less grapple with, the foregoing. Instead, they briefly contend that each of the *Pioneer* factors supports their position. *See* Destin.Br.12-13. But even

---

[8] In claiming "excusable neglect," the Destin Appellants cannot divorce themselves from their counsel's conduct. "[C]lients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396. Thus, in determining whether "excusable neglect" under Rule 60(b)(1) has been shown, "the proper focus is upon whether the neglect of [plaintiffs] *and their counsel* was excusable." *Id.* at 397.

assuming that this Court's decisions do not already foreclose their 60(b)(1) claim, the Destin Appellants' arguments are unavailing.

First, the Destin Appellants contend that they complied with PTO 65 "a mere two months after the original deadline." Destin.Br.12. But that is no virtue, particularly since Judge Barbier had already given plaintiffs *three months* to comply, and counsel had disregarded PTO 12's registration requirement *for a year and a half*—even though Judge Barbier placed PTO 12 on all individual dockets precisely to ensure that everyone understood MDL 2179's rules and received his orders. And the "mere two months" is far longer than the delay in the single decision cited by Appellants where this Court has found "excusable neglect"—a delay of *one day. See Cowart v. Ingalls Shipbuilding*, 192 F.3d 126, 126 (5th Cir. 1999).[9]

Second, Appellants contend that their two-month noncompliance "was the result of an inadvertent mistake" because their counsel was reviewing the individual dockets, not the MDL docket, and was unaware of PTO 12's requirement to register for File & Serve, which was "ordered

---

[9] *Cowart* also involved a compelling reason for the delay distinguishable from the careless mistake here: a paralegal was supposed to file a document three days before the deadline, but "her son was involved in a serious automobile accident." 192 F.3d at 126.

six (6) years prior to counsel's appearance and buried among thousands of filings." Destin.Br.12-13. As already explained, for many reasons, this contention does not aid Appellants. But it bears specifically re-emphasizing that this excuse does not hold water because PTO 12 was placed on the *individual dockets*—which, for the Destin Appellants, contain about ten entries, not "thousands of filings." *E.g.*, ROA.19-30001.26944.

Third, the Destin Appellants argue that there is not "any prejudice" as a result of their late filing. Destin.Br.12. But this Court has twice rejected the argument that not timely complying with an MDL 2179 PTO results in no prejudice. In *Barrera* and *Graham*, the plaintiffs argued that excusing their noncompliance with PTOs 60 and 63, respectively, would not prejudice anyone. Both times, however, this Court disagreed. *See Barrera*, 907 F.3d at 236 (holding that "[a]ny sanction other than dismissal would not achieve the desired effect of PTO 60, and would further delay the district court's efforts to adjudicate the MDL expeditiously."); *Graham*, 922 F.3d at 667 ("We reach the same conclusion [as in *Barrera*].").

That reasoning is correct and applies here. Like PTOs 60 and 63, PTO 65 also exists "to streamline proceedings," and so "[a]ny sanction other than dismissal" would only "delay the district court's efforts to adjudicate

the MDL expeditiously." *Barerra*, 907 F.3d at 236. The purpose of court orders like PTOs 60, 63, and 65 is to clean up the MDL docket and facilitate the further orderly resolution of claims. An MDL court must be able to organize claims and process similar ones using the same deadlines. This allows the court to keep the trains running on time—no small task in any MDL, much less the "epic" *Deepwater Horizon* MDL. And it serves the interests of the plaintiffs who do comply with the PTOs and are waiting for the court to turn to their claims. The more time that Judge Barbier must spend on parties who disobey PTOs—for instance, by allowing them to proceed on a different track, or by shoehorning them back into a process that has already moved on (*cf.* PTO 67) while they seek reconsideration or appeal their conceded noncompliance—the less time he can devote to resolving the claims of parties who *did* comply. That, in turn, harms those parties, BP (which also seeks claim resolution), and "judicial administration." *Pioneer*, 507 U.S. at 398.

Fourth, the Destin Appellants contend that they "worked in good faith to actively pursue their claims in the Individual Actions." Destin.Br.13. Perhaps—although even Judge Barbier was rightly skeptical of their assertions that their counsel "diligently reviewed" the individual

dockets. ROA.19-30001.21690. Any "diligent[] review[]" of those sparsely-populated dockets should have led to counsel obtaining PTO 65, either because PTO 1—filed on the individual dockets—directed the reader to the MDL docket, or because PTO 12—also filed on the individual dockets—required counsel to register for File & Serve. In all events, the mere fact that the Destin Appellants may have acted without bad faith does not compel the conclusion that Judge Barbier abused his discretion, as demonstrated by the numerous foregoing decisions in which this Court held that counsel's careless mistake, even if made without bad faith, did not warrant relief under Rule 60(b)(1). *See* pp.34-37, *supra.*

Finally, the few cases cited by the Destin Appellants do not help them. They cite *In re Pollak*, 223 F. App'x 309 (5th Cir. 2007), for the proposition that "[a] court must apply" *Pioneer*'s "four-factor equitable test." Destin Br. 11 (emphasis omitted). Yet there, the Court *affirmed* dismissal because the party's failure to timely file a document was "merely a usual case of failing to file on account of 'inadvert[e]nce, ignorance of the rules, or mistakes construing the rules,'" *Pollak*, 223 F. App'x at 309 (quoting *Pioneer*, 507 U.S. at 392)—precisely the situation here. What is

41

more, the Court affirmed in *Pollak* even though the delay was a mere four days—exponentially less than the two-month delay here. *Id.*

The Destin Appellants also cite *Cowart*, but as explained, *see* n.9, *supra*, that case is easily distinguishable. The delay there was only one day, and the reason for the delay was not inadvertence or "careless mistake[s] of counsel," *Rayford*, 740 F. App'x at 436-37, but a paralegal's son having been "involved in a serious automobile accident," *Cowart*, 192 F.3d at 126.

Last, the Destin Appellants cite *Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000). That case, too, is plainly inapposite. There, the plaintiff failed to timely oppose summary judgment when his counsel suddenly left the country due to a "family emergency." Before counsel left, he requested an accommodation from opposing counsel. Rather than cooperating, however, opposing counsel "filed papers in the district court asking that its motion be granted as unopposed" without telling the court about the movant's absence from the country or the prior request to postpone summary judgment briefing. *Id.* at 1223. A divided Ninth Circuit panel held that, under these unusual circumstances, the failure to timely file an opposition was due to excusable neglect. These facts are not at all similar to those here. Furthermore, neither *Bateman* nor any of Appellants'

other cases arose in the context of an MDL, much less this "epic" MDL, where disregarding court orders prejudices numerous other parties and the court itself.

## II.     The District Court Did Not Abuse Its Discretion By Dismissing The Park National Appellants' Claims With Prejudice.

Judge Barbier also did not abuse his discretion by dismissing the claims of the Park National Appellants, who disobeyed not one but *two* of his orders—PTO 65 *and* the Show Cause Order.  Faced with the formidable task of explaining why an MDL judge abuses his significant discretion when dismissing with prejudice plaintiffs who have ignored multiple orders, the Park National Appellants devote a substantial portion of their brief to trying to move the goalposts, seeking a more forgiving standard for their serial noncompliance.  All of these efforts fail.  There is no basis in law or logic to conclude that Judge Barbier abused his discretion by dismissing the repeat-offender Park National Appellants.

### A.     Judge Barbier Did Not Abuse His Discretion in Denying The Park National Appellants' Rule 59(e) Motion, the Only Order Properly Before This Court.

**1.** As a threshold matter, contrary to the Park National Appellants' assertion—buried well into their brief, *see* PN.Br.36-38—the only order that

is properly before this Court for review is Judge Barbier's denial of their

"Motion to Alter or Amend Judgment," which they brought under Fed. R.

Civ. P. 59(e). ROA.18-31292.21059. It is undisputed that the Park National

Appellants received both PTO 65 and the Show Cause Order, but did not

respond to either. The first (and only) time Appellants sought relief from

Judge Barbier was in their post-dismissal Rule 59(e) motion, and that was

the first (and only) time that Judge Barbier ruled on any of their arguments.

Accordingly, in determining whether Judge Barbier abused his discretion

as to the Park National Appellants, this Court should examine only his

ruling on their 59(e) motion and, in turn, apply only the standards

applicable to review of such motions.

The Park National Appellants resist this straightforward conclusion.

Likening themselves to the appellants in *Perez* and the Lindsay Appellants

in *Graham*, they argue that, in those cases, this Court "reviewed the

dismissal order itself" and "did not limit its review" to orders denying

motions for reconsideration. PN.Br.36-37. To begin with, these two

examples are odd authorities for Appellants to invoke, given that the Court

*affirmed* Judge Barbier's dismissals with prejudice as to those two sets of

appellants. Regardless, in neither of those cases did the plaintiffs fail to

offer an explanation even when given an opportunity to do so in a show cause order. In *Perez*, the appellants timely responded to a show cause order and argued that PTO 60 was substantively invalid. In *Graham*, there was no show cause order. This case alone involves plaintiffs who ignored both a court order *and* a show cause order—and only then, in a post-dismissal motion, provided their explanation for noncompliance. Accordingly, it is only Judge Barbier's post-dismissal order addressing that explanation that is under review.

**2.** Under the "highly deferential" standard applicable to review of denials of Rule 59(e) motions, *Alabama-Coushatta Tribe*, 918 F.3d at 447, Judge Barbier plainly did not abuse his discretion in denying the Park National Appellants' Rule 59(e) motion. That is so for two reasons.

*First*, it is black-letter law that a Rule 59(e) motion cannot be used to raise arguments that could have been presented earlier. A Rule 59(e) motion "is not the proper vehicle for … arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *see also Schiller v.*

*Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  As they now do before this Court, *see e.g.*, PN.Br.6-10, 12-13, 15, 17, the Park National Appellants repeatedly argued in their Rule 59(e) motion that "[t]he failure to comply with PTO 65 was due to the inadvertence and excusable neglect" of their counsel.  ROA.18-31292.21061; *see also* ROA.18-31292.21068.  But these are precisely the kind of arguments that could, and should, have been made in response to the PTO 65 Show Cause Order.  The entire point of a show cause order is to give a party a chance to explain itself.  A party that receives that opportunity but does not take advantage of it is not entitled to a do-over via Rule 59(e).[10]

*Second*, the Park National Appellants have not demonstrated that Judge Barbier abused his discretion in determining that they were not entitled to relief under Rule 59(e).  That rule is an "extraordinary remedy" that "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  *Templet*, 367

---

[10] *See, e.g.*, *Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008) (affirming where plaintiff did not respond when ordered twice to show cause, because even though plaintiff's "motion for reconsideration … provide[d] a detailed explanation," reconsideration "is not the proper vehicle to raise arguments that should have been made before judgment"); *cf. Mastronardi v. Wells Fargo Bank*, 653 F. App'x 356, 358 (5th Cir. 2016) (affirming where the parties failed to respond to a show cause order).

F.3d at 479. But neither below nor before this Court have the Park National Appellants identified any "manifest errors of law or fact" or "newly discovered evidence." Instead, they contend that they were entitled to relief to "avoid manifest injustice." PN.Br.38. Even assuming that is a basis for Rule 59(e) relief,[11] Appellants have not shown that failing to find a "manifest injustice" here was an abuse of discretion.

The Court has described the "manifest injustice" standard as "a necessarily very high standard to meet." *United States v. Martinez-Leon*, 689 F. App'x 355, 356 (5th Cir. 2017). It is even more "stringent" than the rational-jury standard for sufficiency-of-the-evidence challenges, *United States v. Sparks*, 2 F.3d 574, 579 n.5 (5th Cir. 1993), itself one of the most imposing standards in the law.[12] But the Park National Appellants' task is

---

[11] Although *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002), stated that "prevent[ing] manifest injustice" permits granting Rule 59(e) relief, the Court provided no authority for that statement and did not apply it, rendering it *dictum*. Additionally, *Benjamin Moore* appears to be this Court's last published decision recognizing that ground; more recent decisions do not include "prevent[ing] manifest injustice" among the bases for Rule 59(e) relief. *See, e.g.*, *Matter of Life Partners Holdings, Inc.*, ___ F.3d ___, 2019 WL 2315028, at *15 (5th Cir. May 31, 2019); *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 226–27 (5th Cir. 2018).

[12] As the Park National Appellants acknowledge, "this Court has not provided an explicit definition of manifest injustice" for Rule 59(e) motions, PN.Br.39—likely because there are no cases by this Court finding

even more onerous, because they must show not only that there was a "manifest injustice," but that it would have been an abuse of discretion *not* to find a manifest injustice. And on top of this double deference comes yet another layer of "special deference" accorded to MDL judges. *Barrera*, 907 F.3d at 235.

Given this multi-tiered deference, the burden is on the Park National Appellants essentially to show that there is not even an iota of a conceivable basis for concluding that dismissal of their claims with prejudice was fair. But of course there is—and then some. Appellants failed to comply with not one but *two* court orders. Appellants repeatedly claim that this disregard was due to counsel's "inadvertence," but offer no further elaboration, much less explain how "inadvertence" led to not one but *two* instances of noncompliance with unambiguous orders that clearly applied to Appellants (and, as to the show cause order, identified Appellants *by name*). And as explained with respect to the Destin Appellants, it is simply not the case that Appellants' disobedience of Judge Barbier's orders has resulted in no prejudice. *See* pp.39-40, *supra*.

---

manifest injustice under Rule 59(e). The cases cited herein arise in other contexts.

BP will elaborate further on these points below, in the context of other standards that Appellants attempt to invoke. But for purposes of the "manifest injustice" standard, BP need go no further. In the circumstances of this case, dismissing the Park National Appellants' claims with prejudice due to their serial disobedience of court orders did not work a "manifest injustice." At the least, it was well within the bounds of Judge Barbier's substantial discretion *not* to find "manifest injustice."

**B.** **Even If The Court Considers the Dismissal Order, Judge Barbier Did Not Abuse His Discretion in Dismissing the Park National Appellants' Claims With Prejudice.**

**1.** Even if the Court also reviewed Judge Barbier's dismissal order, and not just his order denying the Rule 59(e) motion, the Park National Appellants have not shown that Judge Barbier abused his discretion.

As this Court has twice held in connection with other PTOs, MDL judges enjoy not just the usual abuse-of-discretion deference accorded when reviewing docket-management orders, but "special deference." *Graham*, 922 F.3d at 666; *Barrera*, 907 F.3d at 235. That is because the "ability for judges to enforce orders pertaining to the progress of their cases" is "most important in MDL cases," the "very purpose" of which is "the efficient progress of the cases in preparation for trial." *Barrera*, 907

49

F.3d at 235 (quotation marks and brackets omitted). That reasoning applies with especial force here, because PTO 65 described its requirements as "an important step toward bringing these cases to trial." ROA.18-31292.20581.

As this Court has also twice held, and the Park National Appellants concede, *see* PN.Br.21, 29-30, dismissal with prejudice for violations of docket-management orders is permissible "where there is a clear record of delay or contumacious conduct by the plaintiff," and "where lesser sanctions would not serve the best interests of justice," *Barrera*, 907 F.3d 235 (quotation marks omitted); *see also Graham*, 922 F.3d at 666. Here, there was "a clear record of delay or contumacious conduct" by the Park National Appellants, and no "lesser sanctions would serve the best interests of justice." At a minimum, under the highly deferential standard of review applicable here, the Park National Appellants have not come close to showing that it would be an abuse of discretion to conclude otherwise.

First, there was a "clear record of delay." Appellants disregarded not one but *two* court orders. PTO 65 gave plaintiffs three months to comply—January 11, 2018 to April 11, longer than any of the other recent PTOs. Once the PTO 65 deadline passed, another month-and-a-half went by before Judge Barbier issued his show cause order on May 25—which gave

noncompliant plaintiffs yet another three weeks (to June 15) to explain themselves. Still another month went by before Judge Barbier issued his dismissal order on July 10. Only *after* that order did the Park National Appellants finally respond—*six months* after PTO 65 was issued, *three months* after PTO 65's deadline, nearly *two months* after the show cause order, and *over a month* after the show cause order's deadline. In the meantime, "hundreds of other plaintiffs complied with" PTO 65. *Barrera*, 907 F.3d at 235. And despite "numerous opportunities" to comply, the Park National Appellants "repeatedly failed" before their dismissal "to provide the district court with any affidavits or other documentation to corroborate and explain their reasons" for noncompliance. Accordingly, their "failure to comply" with PTO 65 and the show cause order "constitutes a clear record of delay." *Id.* at 235 n.4.[13]

Tellingly, the Park National Appellants barely attempt to argue that there was no clear record of delay. All they have to say is that they submitted their required documents "three months after the deadline set forth in PTO 65." PN.Br.27. Again, that is a vice, not a virtue—it is more

---

[13] Indeed, there is an even more straightforward "record of delay" here than in *Barrera*, where the plaintiffs at least responded to PTO 60's show cause order—unlike the Park National Appellants.

than double the generous time that Judge Barbier provided. Moreover, Appellants gloss over the fact that they also filed their submission nearly two months after the show cause order, to which they also failed to respond. Instead, Appellants skip ahead to contending that they did not display "contumacious conduct." PN.Br.27-28, 30-32. But the standard is "clear record of delay *or* contumacious conduct." Because there is a clear record of delay here—or, at a minimum, that it would not be an abuse of discretion to find a clear record of delay—this Court need not even address "contumacious conduct." *Cf. Barrera*, 907 F.3d at 236.

Regardless, the undisputed record also supports a finding of "contumacious conduct"—or, at a minimum, that it would not be an abuse of discretion to find contumacious conduct. The Park National Appellants disobeyed multiple orders, including a show cause order. *See Anderson v. Rossotti*, 277 F.3d 1373, 1373 (5th Cir. 2001) (holding that when a party fails to explain itself in a show cause order, a district court does not abuse its discretion in finding that the party has "wilfully abused the judicial process"). Appellants received both orders, and both orders unambiguously applied to them. And through the show cause order, they also were given an additional opportunity "specifically to comply with"

PTO 65. *Graham*, 922 F.3d at 667. The show cause order also warned that noncompliant plaintiffs faced dismissal "with prejudice." ROA.18-31292.20614; *see also Graham*, 922 F.3d at 666 (emphasizing warning); *Barrera*, 907 F.3d at 236 (same). And Judge Barbier's "prior dismissals" under other PTOs "should have alerted" Appellants that "these management orders must be taken seriously." *Graham*, 922 F.3d at 667 n.1. Yet against all this, the Park National Appellants "did nothing," supporting a finding of contumaciousness. *Id.* at 666.

In response, the Park National Appellants principally rely on one argument—one word, in fact: "inadvertence." They repeatedly incant that their serial noncompliance with Judge Barbier's orders was "due to the inadvertent error of counsel." *E.g.,* PN.Br.6-7, 12, 17, 30. But this post hoc rationalization does not defeat a finding of contumaciousness. *One* failure to comply with a court order might be "inadvertent"; *two* is not, especially when the noncompliance occurs *three months apart*.[14] Moreover, counsel was well aware that Judge Barbier had recently been issuing PTOs requiring action by plaintiffs (under threat of dismissal with prejudice),

---

[14] Even now, Appellants disingenuously characterize their noncompliance as an "isolated incident." PN.Br.41. Something that happens repeatedly, several months apart, is not an "isolated incident."

and should reasonably have expected further orders or actions on the still-remaining cases: Not only would any reasonable *Deepwater Horizon* attorney have known this, but the *same* counsel had already submitted the Park National Appellants' responses to PTO 60. Finally, at no point have Appellants provided further specifics behind the supposed "inadvertence" for their repeated noncompliance, even in their post-dismissal filings below. Thus, just as in *Barrera*, where the Court rejected "untimely declarations" that "failed to provide any reasonable explanation for the delay," 907 F.3d 236 n.3, the Court here should reject the Park National Appellants' untimely efforts lacking any "reasonable explanation."[15]

Notably, the Park National Appellants do not attempt to liken this case to that of the D'Amico Appellants in *Graham*—the only plaintiffs whose dismissals with prejudice this Court has reversed in its many recent

---

[15] The only scintilla of explanation that Appellants have ever provided for their counsel's "inadvertence" is that he "did not recognize [PTO 65's] application to this Plaintiff's claims." ROA.18-31292-21063. As set forth in the text, that excuse is implausible, but more important, it is unavailing. In *Graham*, the Lindsay Appellants "claimed to be confused about whether the order applied to their claims," but this Court held that "any confusion was dissipated by" a subsequent order "which expressly told them they were 'to comply with PTO 63.'" 922 F.3d at 667 n.1. Likewise, the subsequent show cause order here expressly required the same of the Park National Appellants with respect to PTO 65.

PTO dismissal cases.[16]  Understandably so, for this appeal is nothing like that appeal, and the distinctions underscore why affirmance is proper here.

In *Graham*, the D'Amico Appellants (1) had at least timely filed sworn statements by the court's deadline, rather than filed nothing at all; and (2) had failed to file the additional required individual complaints only because they had received and relied on erroneous guidance from the Plaintiffs' Steering Committee.  922 F.3d at 668.  The circumstances here are markedly different.  The D'Amico Appellants responded on time to PTO 63 but submitted deficient materials; the Park National Appellants did not respond at all to either PTO 65 or a show cause order.  The D'Amico Appellants reached out to experienced counsel for advice on how to comply but received (and relied on) erroneous guidance; the Park National Appellants did nothing.  The D'Amico Appellants explained the precise reasons why they erred; the Park National Appellants simply blame "inadvertence."  If "[t]here is a critical difference between trying but failing, on the one hand, and simply not trying, on the other," *id.* at 668, the D'Amico Appellants fall squarely into the former camp, and the Park

---

[16] Having failed to do so, the Park National Appellants cannot do so in their reply brief.  *See* n.3, *supra*.

National Appellants fall into the latter.

Indeed, the Park National Appellants are much closer to the Lindsay Appellants in *Graham*. The Lindsay Appellants missed a deadline after receiving an extension; the Park National Appellants missed a deadline after receiving an opportunity to explain why they missed an earlier deadline. The Lindsay Appellants tried to brush off their failure as negligence, despite Judge Barbier's warnings, *see* 922 F.3d at 667 n.1; the Park National Appellants make the same argument, *see* PN.Br.27-28, despite an equally clear warning.[17] In short, to the extent the Court even addresses contumacious conduct (apart from clear record of delay), the record and caselaw readily defeat the suggestion that a finding of contumacious conduct is beyond the bounds of discretion.

Finally, it would not have been an abuse of discretion to conclude that no lesser sanction than dismissal with prejudice would serve the best interests of justice. To begin, a show cause order *is* a lesser sanction. *See,*

---

[17] As *Graham* makes clear, a court can infer willfulness from conduct, including missed deadlines, particularly when a subsequent order "expressly told" a party "to comply" with a previous order, 922 F.3d at 667 n.1; *see also Moore v. CITGO Refining & Chems. Co., LP*, 735 F.3d 309, 316 (5th Cir. 2013), or the disobeyed order is a show cause order, *see Anderson*, 277 F.3d at 1373.

*e.g.*, *Mastronardi*, 653 F. App'x at 358; *Callip v. Harris Cty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985). Beyond that, via the show cause order, Judge Barbier gave "warnings and second chances" before dismissing Appellants' claims. *Barrera*, 907 F.3d at 236; *Graham*, 922 F.3d at 667. And when a PTO's purpose is to help "streamline" an MDL, as was the case with PTO 65, "[a]ny sanction other than" dismissal with prejudice "would not achieve the desired effect" and "would further delay the district court's efforts to adjudicate the MDL expeditiously." *Barrera*, 907 F.3d at 236; *see also Graham*, 922 F.3d at 667. Accordingly, the Park National Appellants' plea for "lesser alternatives"—for example, yet *another* warning about noncompliance, PN.Br.32-33—is contrary to precedent and, if accepted, would have anti-deterrence effects far beyond PTO 65. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam). If multiple MDL court orders can be disobeyed, the Court can guess all too well what will happen next in this MDL and others.[18]

---

[18] The Park National Appellants contend there are no "aggravating factors" warranting dismissal with prejudice. *See* PN.Br.33-35. But they concede that such factors are "not required." *Id.* at 33. Indeed, this Court has so held in the context of the *Deepwater Horizon* MDL, *see Barrera*, 907 F.3d at 235 n.1, and beyond, *see Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006). But even were such factors required, they are present here,

### C. The Park National Appellants' Remaining Arguments Lack Merit.

The Park National Appellants advance a smorgasbord of additional arguments. Each is unavailing.

**1.** In another attempt to move the goalposts and obtain a heightened dismissal standard, the Park National Appellants argue that PTO 65 is not a case-management order at all but a discovery order. *See* PN.Br.18-20, 22-29. This argument fails for numerous reasons. *First*, Appellants did not sufficiently raise this argument below. Appellants did not include it in their (non-existent) show cause response. And in their Rule 59(e) motion, aside from two conclusory assertions, *see* ROA.18-31292.21065 (stating that "[i]n essence, the Court issued through PTO 65 a limited discovery request"), ROA.18-31292.21067 (criticizing dismissal "for what is tantamount to a discovery violation"), Appellants did not make, much less develop, the argument that PTO 65 is a discovery order or the dismissal order a discovery sanction. Nor did they suggest any distinctions between the standards for dismissal for a discovery violation versus a case-management violation, or invoke Rule 41(b) (which now forms a key part

---

for as explained, BP, other parties, and the MDL court are prejudiced by noncompliance. *See* pp.39-40, *supra*.

of their argument).   To the contrary, Appellants described PTO 65 as implicating the MDL court's "interest in managing its docket."   ROA.18-31292.21065.   For good reason, then, Judge Barbier did not address this undeveloped contention, and neither should this Court.

*Second*, this argument is incorrect, for PTO 65 is a case-management order, not a discovery order.   On its face, PTO 65 is designed to move the MDL along by informing Judge Barbier and the Neutrals about the remaining B1 claims and whether real individuals are willing to stand by those claims.   Although the Park National Appellants analogize PTO 65 to an interrogatory, an interrogatory is for the benefit of the parties; PTO 65, by contrast, is for the benefit of the court, which will use the information for its own purposes.   Indeed, as PTO 67 confirms, Judge Barbier has already reviewed what he received and used the information to prepare the next step in MDL 2179.   PTO 65's attestation requirement also has a distinct case-management purpose; it is an anti-fraud measure, as this Court recognized in *Barrera*.   *See* 907 F.3d at 236.   And perhaps most definitive of all, PTO 65 cannot be a discovery order because it provides that the stay on individual cases "remain[s] in effect until further order of the Court."   ROA.18-31292.20583.   It makes no sense to say that Judge

Barbier issued a discovery sanction when PTO 65 reaffirms that no individual discovery has yet commenced.

Caselaw supports this conclusion. In *Cepeda*, the Court affirmed dismissal for failure to obey PTO 64, which also required sworn statements about the facts behind B1 claims. This Court concluded that PTO 64 was a lawful exercise of Judge Barbier's "docket management" discretion and applied the standards relevant to dismissal under such orders. 765 Fed. App'x. at 981.

*Third*, this argument is irrelevant. Even if PTO 65 were a discovery order, "dismissal due to noncompliance with discovery orders is not an abuse of discretion." *In re Vioxx Prods. Liab. Litig.*, 509 F. App'x. 383, 387 (5th Cir. 2013) (affirming dismissal under Rule 60). Especially in the context of an MDL where the district court is already due "special deference," *Barrera*, 907 F.3d at 235, there is no reason for a different outcome here, particularly where the Park National Appellants also disobeyed a show cause order.

**2.** The Park National Appellants also suggest that their failure to respond to the PTO 65 Show Cause Order should be excused because Judge Barbier would have dismissed their claims anyway. *See* PN.Br. 8

(noting "other claimants who failed to comply with PTO 65" but "did respond timely to the Show Cause Order" and yet still had their claims dismissed). This unusual argument lacks merit. As evidenced by the fact that he excused the noncompliance of some plaintiffs (both after the show cause order and on motions for post-dismissal relief), Judge Barbier's decisions were based on each plaintiff's particular facts. As to those plaintiffs whose efforts he deemed sufficient or whose excuses he deemed reasonable, Judge Barbier preserved their claims. As to other plaintiffs whose conduct he deemed inexcusable or whose justifications he deemed implausible, Judge Barbier dismissed their claims. The Park National Appellants' real objection is that Judge Barbier should have rubberstamped every excuse, which is the opposite of exercising discretion and which neither precedent nor common sense permits.

**3.** Finally, the Park National Appellants repeatedly stress that they had already provided BP with everything PTO 65 required. *See* PN.Br.3-4, 10-11, 12-13, 17, 22-23, 26-27, 31-32, 34. But they conceded in their Rule 59(e) motion below that their previous submissions of information did *not* cover PTO 65's Question 4, concerning whether a party had retained a damages expert. ROA.18-31292.21066. Even more significant, Appellants'

61

previous submissions were in *2013*.  PTO 65 was issued in *2018*.  As PTO 65 explicitly underscores, Judge Barbier did not want to know *past* information; he wanted someone to attest to *current* information.  Nor does it matter that Appellants provided the Neutrals with information.  Assisting the Neutrals is only part of PTO 65, not the whole of it.  Judge Barbier also wanted updated information *for himself*, and he wanted it backed by a formal attestation.  Settlement discussions with the Neutrals do not satisfy either of these requirements, both of which are plain on the face of PTO 65.  ROA.18-31292.20583.

## CONCLUSION

The judgments should be affirmed.

June 28, 2019

Respectfully submitted,

s/ *George W. Hicks, Jr.*

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

George W. Hicks, Jr.
Aaron L. Nielson
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington,  D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*Counsel for BP Appellees*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing appellate brief was filed electronically on June 28, 2019, and will, therefore, be served electronically upon all counsel.

s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 12,989 words. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more.

s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.