No. 18-31292

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### IN RE: DEEPWATER HORIZON

-----------------------------------------------------------------------------

**PARK NATIONAL CORPORATION, and its wholly owned entities and subsidiaries including; VISION PARK PROPERTIES, L.L.C.; SE PROPERTY HOLDINGS, L.L.C., individually and as successor in interest to; VISION BANK,**

*Plaintiffs-Appellants*

v.

**BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRITON ASSET LEASING GMBH; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated, formerly known as Sperry Sun Drilling Services,**

*Defendants-Appellees*

_____

**Consolidated with 19-30001**

### IN RE: DEEPWATER HORIZON

-----------------------------------------------------------------------------

**DESTIN DEVELOPMENT, L.L.C.,**

*Plaintiff-Appellant*

v.

**BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated, formerly known as Sperry Sun Drilling Services,**

*Defendants-Appellees*

_____

**RODERIC WRIGHT,**

*Plaintiff-Appellant*

**v.**

**BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, Halliburton division, formerly known as Sperry Sun Drilling Services,**

*Defendants-Appellees*

---

**BARBARA WRIGHT,**

*Plaintiff-Appellant*

**v.**

**BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; HALLIBURTON ENERGY SERVICES, INCORPORATED; SPERRY DRILLING SERVICES, a division of Halliburton Energy Services, Incorporated,**

*Defendants-Appellees*

_____

On Appeal from the United States District Court
For The Eastern District of Louisiana
The Hon. Carl Barbier, Judge Presiding

_____

# REPLY BRIEF OF APPELLANTS

_____

**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A**.
Wesley A. Bowden
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Tel: 850-435-7186
Fax: 850-436-6186
wbowden@levinlaw.com

**SCHIFFER HICKS JOHNSON PLLC**
Marc S. Tabolsky
700 Louisiana, Suite 2650
Houston, Texas 77002
Tel: 713-357-5150
Fax: 713-357-5160
mtabolsky@shjlawfirm.com

*Attorneys for Appellants Park National Corporation, and its wholly owned entities and subsidiaries including; Vision Park Properties, L.L.C.; SE Property Holdings, L.L.C.; individually and as successor in interest to; Vision Bank*

ii

Table of Contents ........................................................................................iii

Table of Authorities ...................................................................................vi

Introduction ..................................................................................................1

Argument ......................................................................................................3

I.        The Conduct Here Does Not Warrant Dismissal of Park National's Claims with Prejudice. ...........................................................................3

    A.  Park National's Attorney Gave a Straightforward Explanation for his Inadvertent Failure to Timely Comply with PTO 65 and the Connected Show-Cause Order. ...........................................................4

        1.    In spite of Lead Counsel's diligence, he inadvertently missed the applicability of PTO 65 to Park National's claims. ..............6

        2.    As soon as Lead Counsel realized his error, he immediately arranged for Park National to complete the sworn statements required by PTO 65. ....................................................................10

    B.  BP's Attempts to Transform the Inadvertent Mistake of Park National's Lead Counsel into a Pattern of Misconduct Should Be Rejected. ..........................................................................................11

    C.  This Case Is Nothing Like the Cases Relied on by BP. ....................12

        1.    The considerations that supported dismissal in *Barrera* and other *Deepwater Horizon* MDL cases are not present here. .......13

2. Park National fully complied with PTO 65, albeit belatedly..15

3. Park National filed a sworn affidavit and a personal statement of Lead Counsel in support of its explanation for its lateness in filing its PTO 65 statement. ......................................16

4. Park National made a diligent effort to comply with the requirements of the MDL court. ...............................................17

D. BP Is Wrong in Contending that the District Court's Dismissal Order Should Not Be Reviewed as a Dismissal for Failure to Comply with a Discovery Order.......................................................18

1. There is not even an arguable basis for affirmance if the dismissal order is viewed as a dismissal for failure to comply with a discovery order................................................................18

2. Park National has properly preserved its discovery-order standard argument......................................................................20

3. Park National's discovery-order standard argument is correct.............................................................................................20

E. Even Under the Case-Management Order Standard, the Dismissal Order Must Be Reversed. ...................................................................21

1. The contumacious conduct/delay requirement has not been satisfied. ...................................................................................22

2. The lesser-sanctions requirement has not been satisfied. .......26

3. The absence of aggravating factors supports reversal of the dismissal..................................................................................28

F. BP Has No Valid Answer to the Argument that the Court Should Review the Dismissal Order Itself and Not Just the Order Denying Park National's Rule 59(e) Motion.........................................................30

II. Moreover, the District Court Abused Its Discretion in Denying Park National's Motion for Reconsideration.....................................31

Conclusion.................................................................................................................34

Certificate of Service ...............................................................................................36

Certificate of Compliance .......................................................................................38

## CASES

*In re Deepwater Horizon (Cepeda),*
765 Fed. App'x 980 (5th Cir. 2019) ........................................................ 16, 17

*FDIC v. Conner,*
*20 F.3d 1376* (5th Cir. 1994) ................................................... 3, 18, 34

*In re Benjamin Moore & Co.,*
318 F.3d 626 (5th Cir. 2002) ...........................................................31

*In re Deepwater Horizon (Barrera),*
907 F.3d 232 (5th Cir. 2018) .................................................... *passim*

*In re Deepwater Horizon (Graham),*
922 F.3d 660 (5th Cir. 2019) .................................................... *passim*

*In re Deepwater Horizon (Perez),*
713 F. App'x 360 (5th Cir. 2018) .......................................................31

*In re Vioxx Prods. Liab. Litig.,*
509 F. App'x 383 (5th Cir. 2013) .....................................................20

*John v. State of Louisiana,*
828 F.2d 1129 (5th Cir. 1987) ..........................................................25

*McNeal v. Papasan,*
842 F.2d 782 (5th Cir. 1988) ............................................................8

*McNeal v. Papasan,*
842 F.2d 787 (5th Cir. 1988) .................................................... 24, 26

*Morris v. Ocean Systems,*
730 F.2d 248 (5th Cir. 1984) ..........................................................25

*Oprex Surgery (Baytown) LP v. Sonic Automotive Employee Welfare Benefit Plan*,
704 Fed. App'x 376 (5th Cir. 2017)................................................................28

*Rogers v. Kroger Co.*
669 F.2d 317 (5th Cir. 1982) ...........................................................................24

*Sealed Appellant v. Sealed Appellee*,
452 F.3d 415 (5th Cir. 2006) ...........................................................................22

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) ...........................................................................31

*United States v. $49,000 Currency*,
330 F.3d 371 (5th Cir. 2003) ...........................................................................29

## INTRODUCTION

There can be no doubt that Judge Barbier has undertaken a "herculean" task in overseeing the *Deepwater Horizon* Multi-District Litigation. *See In re Deepwater Horizon (Graham)*, 922 F.3d 660, 664 (5th Cir. 2019). But there also can be no doubt that it remains the obligation of appellate courts to review judgments based on a neutral application of the law – even when the case before the court arises from an MDL.

BP suggests that because special deference is required in the context of an MDL, this Court should abdicate its duty to meaningfully review the district court's rulings in the MDL. But that is not the case and deference does not turn this Court into a rubber stamp. BP's view is likely due to the fact that without such severe deference, it is not possible to uphold the district court's draconian sanction of dismissal with prejudice based on an inadvertent missed deadline by Park National's attorney. This Court has established standards for when a district court has discretion to apply the extreme sanction of dismissal with prejudice. The circumstances here do not satisfy those standards.

BP tells the Court that this appeal "present[s] the Court with an opportunity to reaffirm Judge Barbier's authority for a seventh time" – as if this Court exists for no other purpose than to rubber-stamp the rulings of the MDL court. Br.App'ee 1. In reality, the appeal provides an opportunity for the Court to apply established legal principles that govern and limit the extreme sanction of dismissal with prejudice. Park National submits that applying those principles requires reversal of the MDL court's erroneous dismissal of Park National's claims.

BP describes the MDL court's orders as a "laudable effort to keep the trains running on time" in this complex multi-district litigation. Br.App'ee 26. Timeliness is certainly an important thing, but it is not the only thing. In the context of whether it is appropriate for a trial court to dismiss a plaintiff's claims with prejudice as a sanction for tardiness in complying with a court order, an appellate court must consider a variety of factors, including the interests of justice; whether the non-compliance was intentional; whether a clear record of contumacious conduct or delay exists; whether the non-compliance was attributable to the attorney or the client; whether the other party was substantially prejudiced; and whether lesser sanctions would be

effective. Here, because the tardiness of Park National's compliance with PTO 65 was the result of an inadvertent, isolated mistake by Park National's attorney that caused no harm to BP (or anyone else), the dismissal of Park National's claims with prejudice was an abuse of discretion.

## ARGUMENT

### I. THE CONDUCT HERE DOES NOT WARRANT DISMISSAL WITH PREJUDICE.

This Court has described dismissal with prejudice as a "severe sanction that implicates due process" and a "remedy of last resort" that "should be used as a lethal weapon only under extreme circumstances." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (discussing dismissal with prejudice as discovery sanction). Even in the context of the violation of a docket-management order in an MDL case where "special deference" is afforded to the MDL court, this Court has observed that dismissal with prejudice is "an extreme sanction that deprives the litigant of the opportunity to pursue his claim" and therefore "the district court's discretion in dismissing cases with prejudice" is "limited." *Graham*, 922 F.2d at 666.

3

Aware that dismissal with prejudice requires serious, willful, and persistent misconduct, BP wrongly argues that (1) Park National has given an inadequate explanation for its belated compliance with PTO 65 and (2) Park National has engaged in continuous and ongoing misconduct. Neither argument is supported by the record.

### A. Park National's Attorney Gave a Straightforward Explanation for his Inadvertent Failure to Timely Comply with PTO 65 and the Connected Show-Cause Order.

A major theme of BP's brief is its contention that Park National did not adequately explain the reason for its initial non-compliance with PTO 65 and the related show-cause order. *See*, *e.g.*, Br.App'ee 48, 53-54. BP's contention is unfounded. Park National's lead attorney ("Lead Counsel") set forth what happened both in an affidavit and in a similar personal statement included in a brief. *See* ROA.18-31292.21061-63, ROA.18-31292.21076-80.

To put Lead Counsel's mistake in perspective and to show how uncharacteristic it was, Lead Counsel described how diligent and conscientious he has always been in representing his clients in MDL 2179. *See* ROA.18-31292.21061-63, ROA.18-31292.21076-80. He has handled his clients' claims competently and has consistently respected the court's

4

Pretrial and Case Management Orders. ROA.18-31292.21078, ROA.18-31292.21062.

Lead Counsel has represented ninety-eight claimants in the MDL proceeding. ROA.18-31292.21078, ROA.18-31292.21062. He has personally been involved in the resolution of ninety-six sets of claims. ROA.18-31292.21078, ROA.18-31292.21062. Seventeen of his clients (including Park National) were banks. ROA.18-31292.21078, ROA.18-31292.21062. He spent many hours meeting with the Neutrals in an attempt to resolve his clients' claims and succeeded in resolving the claims of fifteen of his seventeen banking clients. ROA.18-31292.21078, ROA.18-31292.21062. Although he was unable to finalize resolution of Park National's claims, he made substantial progress towards that goal. ROA.18-31292.21078, ROA.18-31292.21062.

Lead Counsel's representation of Park National in MDL 2179 was hands-on, involved, and geared towards resolving its claims as quickly as possible. He spearheaded efforts to develop a causation model specifically for banking claimants, consulted with retained experts and former bank auditors to assist in quantifying the bank's losses, and drafted the

Presentment and Complaint filed for Park National. ROA.18-31292.21078, ROA.18-31292.21062.

Through the Presentment and Complaint, Lead Counsel provided BP with the essence of the information required by PTO 65 long before PTO 65 called for that information. ROA.18-31292.21079. *See* Br.App't 3-4, 10-11, 17, 26-27, 34. In addition, he gave BP over 1,700 pages of documents to assist it with the evaluation of Plaintiffs' claims. ROA.18-31292.21079.

### 1. In spite of Lead Counsel's diligence, he inadvertently missed the applicability of PTO 65 to Park National's claims.

On the evening of July 12, 2018, Lead Counsel received an e-mail alerting him to a dismissal in a related case. ROA.18-31292.21077, ROA.18-31292.21062. That e-mail prompted him to investigate further, and he became aware for the first time that a similar dismissal order had been entered in the Park National case. ROA.18-31292.21077, ROA.18-31292.21062. He confirmed the MDL court had not placed either PTO 65 or the show-cause order on the docket in Park National's individual case. ROA.18-31292.20581-20584, ROA.18-31292.29497-29500, ROA.18-31292.2258. However, PTO 65 (dkt. 23,825) had been distributed via e-mail

6

through the MDL's general docket on January 11, 2018.  The related show-cause order (dkt. 23,825) likewise had been distributed through the MDL's general docket on May 25, 2018. ROA.18-31292.21077, ROA.18-31292.21062.

Unfortunately, through inadvertence, Lead Counsel did not connect the dots and did "not recognize that [PTO 65] applied to [Park National's] claims."  ROA.18-31292.21077, ROA.18-31292.21062.  He explained that his "oversight was completely unintentional and completely uncharacteristic as is evident from my prior dealings with the Court, its appointed Neutrals, and BP."  ROA.18-31292.21077-78, ROA.18-31292.21063.

Lead Counsel never tried to pass the buck or make excuses.  He took full responsibility for his mistake.  He said, "All associated counsel in this case were relying upon my oversight for compliance with the Court Orders. My client was likewise unaware of the pending requirements for PTO 65 and believed its claims were proceeding forward with the Court."  ROA.18-31292.21063.

BP chides Park National for not offering "further elaboration" or "further specifics" concerning Lead Counsel's inadvertence.  Br.App'ee 48, 54.  But what more was there to say?  When an attorney inadvertently misses

something, he just misses it.  Who hasn't just missed something and then been jolted into awareness by something else?  In describing his reaction to discovering his mistake, Lead Counsel says, "I became terribly distraught, realizing that I had inadvertently overlooked the application of PTO 65 to [Park National's] claims and the subsequent Order to Show Cause.  I immediately recognized the grave prejudice this had caused my client despite my efforts to diligently pursue its claims."  ROA.18-31292.21062.[1]

And yet, while Lead Counsel made a mistake, that mistake is also understandable, especially in the context of this complex MDL.  With respect to Lead Counsel's failure to appreciate PTO 65's applicability to Park National's claims, PTO 65 does not specifically identify the plaintiffs obligated to submit the required statement and so does not identify Park National by name. ROA.18-31292.20581-20584.  Nor does the docket entry for PTO 65 identify the claimants subject to its requirements.  ROA.18-31292.2191. Moreover, PTO 65 was not entered under the 2862 case number

---

[1] As discussed below, any negligence on Park National's part could not serve as a basis for dismissing Park National's claims with prejudice because only "contumacious" conduct can justify that sanction.  *See McNeal v. Papasan,* 842 F.2d 787, 792 (5th Cir. 1988); 24, *infra.*

for Park National's individual case.[2]   ROA.18-31292.20581-20584, 29497-29500.

Instead, PTO 65 referred to claimants identified on two lists attached to a *prior* order denying certain claimants' motion to reconsider a 2017 pretrial order called Pretrial Order 64.  ROA.18-31292.20582. Park National had not moved for reconsideration and so naturally was not focused on the order denying reconsideration.   ROA.18-31292.20550.  Nevertheless, Park National would have had to go to a list attached to that order to find itself identified as a party covered by PTO 65.  ROA.18-31292.20568.

Thus, to determine that PTO 65 applied to Park National, Lead Counsel would have had to follow a convoluted trail.  While he certainly should have tracked down that trail and followed it from beginning to end, the fact that he got lost along the way reflects inadvertence and confusion, not bad faith or intentional misconduct.

Nor was Park National alone in its confusion regarding the PTOs: twenty-five claimants in the MDL filed answers to PTO 65 even though the

---

[2] The show-cause order also was only filed under the MDL case number and not under Park National's individual case number. ROA.18-31292.2258, 29497-29500.

MDL court later ruled there was no reason for them to do so. ROA. 18-31292.20615. In addition, the Plaintiffs' Steering Committee gave the D'Amico Appellants the erroneous advice that led to the dismissal of their claims (which this Court later reversed). *See Graham*, 922 F.3d at 667-68. Even the File & Serve system used by the court made a mistake that caused some parties not to receive the show-cause order. *See* ROA.18-31292.21446 (MDL order stating, "It does appear from the evidence submitted that File & Serve failed to serve the Show Cause Order on anyone.") The bottom line is that glitches happen.

> **2. As soon as Lead Counsel realized his error, he immediately arranged for Park National to complete the sworn statements required by PTO 65.**

Another factor weighing against the dismissal of Park National's claims with prejudice is that after Lead Counsel realized PTO 65 applied to Park National, he filed the sworn answers required by PTO 65 within six days. ROA.18-31292.21082-21086. Again, this belated compliance confirms that Park National's failure to timely file the answers was not the result of bad faith or intentional wrongdoing and did not justify dismissal with prejudice.

10

**B. BP's Attempts to Transform the Inadvertent Mistake of Park National's Lead Counsel into a Pattern of Misconduct Should Be Rejected.**

Another major theme of BP's brief is its unfounded assertion that this case involves a continuous and ongoing pattern of misconduct by Park National, not just an isolated incident. Thus, BP accuses Park National of violating "multiple orders," engaging in "serial noncompliance" and "serial disobedience," being a "repeat-offender," and "repeatedly" failing to comply with court orders. *See, e.g.,* Br.App'ee 43, 49, 53 n.14. Putting rhetoric aside, even BP can only come up with *two* related orders to support its allegations against Park National (PTO 65 and the show-cause order tied to PTO 65). *See, e.g.,* Br.App'ee 2, 18, 21, 43, 50, 53. BP's accusations against Park National may not be outright falsehoods since, technically, two orders are "multiple orders," *etc.*, but BP's misleading allegations certainly create a false impression.

Moreover, even though this case involves two intertwined orders, the case is fundamentally about a single situation and one causative misstep by Park National. That misstep occurred when Lead Counsel failed to appreciate that PTO 65 applied to Park National. Because he was unaware

11

that PTO 65 affected Park National, he likewise was unaware that the show-cause order pertaining to PTO 65 had any relevance to Park National either. Far from involving a series of blunders, this case involves an isolated incident.

BP's obsessive focus on the violation of two orders (as opposed to one order) is misplaced because the MDL court also struck the claims of plaintiffs who had only missed one order like the Destin plaintiffs. *See* ROA.18-31292.21444-21445. The MDL court, in effect, imposed a one-strike-and-you're-out rule. *See id.* Thus, Park National was doomed to dismissal once it missed PTO 65, and complying with the show-cause order would not have changed that result.

### C.   This Case Is Nothing Like the Cases Relied on by BP.

BP creates the impression that judicial review of MDL decisions is little more than a conveyor belt for affirmance. *See* Br.App'ee 1-2. Citing various MDL cases, BP suggests this case is just next in line for rubber-stamping. *See id.* But a review of the cases relied on by BP shows they are nothing like the present case. In fact, they show why this case should be reversed.

12

In *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 234 (5th Cir. 2018), this Court stated the MDL "was created following the Deepwater Horizon accident in 2010 to ensure that the people and entities affected by the accident with legitimate claims could recover." The Court also noted that "unfortunately, there have been fraudulent claims filed on behalf of fictitious plaintiffs related to the Deepwater Horizon accident." *Id.* at 236. Finally, the Court concluded, "Dismissal with prejudice is a proper remedy to prevent lawsuits from non-existent plaintiffs, which further hamper the resolution of meritorious claims by real plaintiffs." *Id.*

There can be no doubt that Park National falls into the class of "real plaintiffs" who have "legitimate claims," not in the class of "fictitious plaintiffs" asserting "fraudulent claims." The "interests of justice" focused on in *Barrera* favor reinstatement of Park National's claims, not affirmance of the dismissal of those claims. *Id.*

> **1.  The considerations supporting dismissal in *Barrera* and other *Deepwater Horizon* MDL cases are not present here.**

One of the challenges faced by the *Deepwater Horizon* MDL court was how to deal with hordes of plaintiffs recruited from around the world – or

13

even fabricated from whole cloth – whose attorneys had little or no connection with them and had no way to shepherd them through the litigation process as attorneys are supposed to do. To try to separate the wheat from the chaff, the MDL court devised PTO 60, which required all remaining plaintiffs who had not done so to file individual lawsuits containing "wet-ink signature[s]" by a specified deadline. *Barrera*, 907 F.3d at 234. Even after requesting and obtaining an extension (demonstrating beyond any doubt that they were aware of PTO 60 and its applicability to them), almost none of the 1,510 *Barrera* plaintiffs filed the sworn declarations required by PTO 60. *Id.* at 234-36 & n.3. The knowing failure of the plaintiffs to comply with PTO 60 demonstrated a lack of interest or lack of ability to proceed with the lawsuit, justifying dismissal.

By contrast, the four related Park National plaintiffs involved in this appeal promptly filed the statements required by PTO 65 as soon as Lead Counsel became aware of the applicability of PTO 65 to their claims. *See* 10, *supra.* Park National was actively and diligently pursuing its claims notwithstanding the error made by its Lead Counsel. *See* 4-6, *supra.*

14

The situation in *Barrera* and other cases involving PTO 60 also differ from the situation here because PTO 60 required claimants to file individual lawsuits by a specified deadline, thus implicating statute-of-limitations considerations. *See Barrera,* 907 F.3d at 234. Because of the MDL procedures, delays in filing lawsuits had the potential for extending BP's liability, a serious concern. But any delays in complying with PTO 65 merely postponed the filing of a two-page form regarding damages when Park National had previously provided BP extensive damages disclosures, *see* Br.App't 3-4, 10-11).

> **2. Park National fully complied with PTO 65, albeit belatedly.**

As noted, Park National filed the sworn statement required by PTO 65 within a week after Lead Counsel became aware of the need to do so. ROA.18-31292.21082-21086. By contrast, in *Barrera*, the Court stated that, with just a few exceptions, "Plaintiffs *never* filed sworn declarations that complied with PTO 60." 907 F.3d at 236 (emphasis in original). Further, the Court implicitly recognized the injustice of dismissing the claims of Plaintiffs who ultimately did file declarations (even if tardily) by noting that

15

additional reasons supported the dismissal of their claims.  *Id.* at n.3.  *Cf.*

*Graham*, 922 F.3d at 666 (dismissal affirmed as to Lindsay Appellants, who

did not comply with PTO even belatedly and instead "did nothing").

3. **Park National filed an affidavit and a personal statement of Lead Counsel in support of its explanation for its lateness in filing its PTO 65 statement.**

In reversing the MDL court's dismissal of the D'Amico Appellants'

claims in *Graham*, this Court noted that the D'Amico Appellants

"corroborated their claim that they misunderstood PTO 63 with

documentation."  922 F.3d at 668.  Conversely, in a number of cases, this

Court's affirmance of dismissal orders was at least partially based on the fact

that the claimants did *not* provide any evidence or corroboration in support

of their explanations for non-compliance.  *See Barrera*, 907 F.3d at 235

(dismissal affirmed where "Plaintiffs did not submit any documentation or

other evidence . . . corroborating their explanation for the delay"); *In re*

*Deepwater Horizon (Cepeda)*, 765 Fed. App'x 980, 982 (5th Cir. 2019) (dismissal

affirmed where "appellants did not provide any relevant documentation of

their attorneys' efforts to comply with the order").

In the present case, like in *Graham* and unlike in *Barrera* and *Cepeda*, Park National provided corroborating evidence. Lead Counsel filed an affidavit and a personal statement explaining the reasons for Park National's belated compliance with PTO 65. ROA.18-31292.21061-21063, ROA.18-31292.21077-21079.

### 4. Park National made a diligent effort to comply with the requirements of the MDL court.

As this Court held in *Graham*, "There is a critical difference between trying but failing, on the one hand, and simply not trying, on the other." 922 F.3d at 668. Park National and its lead counsel tried their best to comply with the requirements of the MDL court, and when they fell short, they did their best to remedy the situation by promptly filing the required sworn answers. *See* 4-6, 10-11, *supra.*

**D. BP Is Wrong in Contending that the Dismissal Order Should Not Be Reviewed as a Dismissal for Failure to Comply with a Discovery Order.**

    **1. There is not even an arguable basis for affirmance if the dismissal order is viewed as a dismissal for failure to comply with a discovery order.**

A central argument in Park National's Brief of Appellants is that the dismissal order should be reviewed as a dismissal for failure to comply with a discovery order rather than as a dismissal for failure to comply with a case-management order. Br.App't 18-26. This argument is vitally important because – although Park National is entitled to reversal under either standard – there is not even an arguably colorable basis for affirmance under the discovery-order standard.

That is true because of the Court's holding that before a "court may dismiss a case as a sanction for *violating a discovery order* . . . . the violation of the discovery order must be *attributable to the client instead of the attorney.*" *Conner*, 20 F.3d at 1380 (emphasis added). Here, it is undisputed that Lead Counsel's inadvertent mistake led to the dismissal of the case, not any misconduct on the part of Park National itself. Lead Counsel confessed as much, saying, "My client was . . . unaware of the pending requirements for

PTO 65 and believed its claims were proceeding forward with the Court."

ROA.18-31292.21063. Thus, there can be no doubt that the dismissal order must be reversed if that order is viewed as a sanction for violating a discovery order.[3]

Knowledge that Park National is correct undoubtedly explains BP's decision just to give Park National's discovery-order standard argument short shrift at the end of its brief. Br.App'ee 60. BP does not address the requirement that the misconduct must be attributable to the client (as opposed to the attorney) or any of the other three Fifth Circuit requirements necessary for discovery-based dismissal. *See* 18-19 & n.3, *supra.* Instead, BP just cites a comment in an unpublished case *decided under Rule 60(b)* that this Court has "previously found that dismissal due to noncompliance with discovery orders is not an abuse of discretion," without identifying the

---

[3] There are three other requirements for dismissal-with-prejudice as a discovery sanction: (1) refusal to comply with discovery must result from willfulness or bad faith and be accompanied by a clear record of contumacious conduct or delay; (2) the discovery violation must substantially prejudice the other side; and (3) a lesser sanction that would substantially achieve the desired deterrent effect must not be available. *See* Br.App't 19-20. Park National has explained how these elements were not met. *See id.* at 26-29.

circumstances justifying dismissal. *In re Vioxx Prods. Liab. Litig.*, 509 F. App'x 383, 387 (5th Cir. 2013), cited at Br.App'ee 60.

### 2. Park National has properly preserved its discovery-order standard argument.

In another attempt to avoid Park National's discovery-order standard argument, BP makes the suggestion (unsupported by authority) that Park National waived its argument in the trial court. *See* Br.App'ee 58-59. But in its Rule 59(e) motion, Park National complained that "[i]n essence, the [district court] issued through PTO 65 a limited discovery request" and that the district court improperly dismissed Park National's claims "for what is tantamount to a discovery violation" – which are the same arguments that Park National is making on appeal. ROA.18-31292.21065. Just as this Court correctly rejected the quibbling-type waiver arguments urged by BP in *Graham*, the Court likewise should reject the similar quibbling-type waiver arguments urged by BP in this appeal. *See Graham*, 922 F.3d at 668-69.

### 3. Park National's discovery-order standard argument is correct.

In its Brief of Appellants, Park National explained why the MDL court's dismissal should be reviewed as a dismissal for discovery-based

violations rather than case-management-order-based violations. *See* Br.App't 5, 18-26. Park National quoted the four questions about damages that PTO 65 required the parties (not their attorneys) to answer under oath. Br.App't 5. These questions are indistinguishable from damages interrogatories propounded in lawsuits across the country every day, which also must be answered *under oath by the parties.* *See* Br.App't 22-23. Given that the questions in PTO 65 are discovery-type questions, any sanctions imposed for failure to respond should be based on the principles relating to discovery violations, not based on principles relating to calendaring and setting-type violations associated with case-management orders.

**E. Even Under the Case-Management Order Standard, the Dismissal Order Must Be Reversed.**

Unlike dismissals based on discovery violations, dismissals based on violations of case-management orders do not absolutely require (1) that the misconduct in question be that of the party itself rather than its attorney or (2) that the misconduct result in substantial prejudice to the moving party (although those two circumstances can be considered aggravating factors and usually *are* present if the extreme sanction of dismissal with prejudice is

imposed for the violation of a case-management order).  *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417-18 (5th Cir. 2006).[4]

However, like dismissals based on discovery violations, dismissals based on violations of case-management orders require "a clear record of delay or contumacious conduct by the plaintiff" and that "lesser sanctions would not serve the best interest of justice."  *Barrera*, 907 F.3d at 235.  Because here there is no clear record of delay or contumacious conduct and because the trial court should have imposed lesser sanctions in the interests of justice, the dismissal should be reversed whether it is viewed as a discovery-sanction order or as an order based on the violation of a case-management order.  *See* Br.App't 26-36.

### 1. The contumacious conduct/delay requirement has not been satisfied.

BP's arguments regarding contumacious conduct blink reality in that they are based on the false premise that Park National was aware of the applicability of PTO 65 and the related show-cause order to its claims when

---

[4] Whether any delay was the result of intentional conduct also is considered an aggravating factor.  *Sealed Appellant*, 452 F.3d at 418.

it is undisputed Park National was *not* aware of that applicability. *See* 4-7, *supra*; Br.App'ee 52-53. Thus, BP's characterization of Park National's conduct as "disobey[ing] multiple orders" (*id.*) is misleading in that it implies that Park National intentionally decided to disregard the orders when in reality Lead Counsel just missed the connection between the two interrelated orders and Park National's claims. *See* 4-7, *supra.*

Cases in which this Court has, and has not, dismissed for contumaciousness expose the ludicrousness of BP's contention that Lead Counsel's inadvertently-missed deadline could satisfy that standard. *Compare Nottingham v. Warden Bill Clements Unit*, 837 F.2d 438, 439-42 (5th Cir. 2016) (dismissal upheld where plaintiff repeatedly, expressly flouted court orders he disagreed with); *Callip v. Harris County Child Welfare Dept.*, 757 F.2d 1513, 1519-20 (5th Cir. 1985) (dismissal upheld where plaintiff failed to comply with nine deadlines, including five where extensions were granted) *with Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982) (dismissal reversed notwithstanding repeated missed deadlines and delays); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 558 (5th Cir. 1981) (dismissal reversed notwithstanding statement that plaintiffs' counsel behaved

"inexcusably"). As these cases show, contumaciousness requires far more direct and intentional disobedience of an order directed at a party.

Lead Counsel's failure to recognize the applicability of PTO 65 and the related show-cause order was, at worst, negligent; it was neither contumacious nor intentional misconduct. As this Court has held, "it is not a party's negligence – regardless of how careless, inconsiderate, or understandably exasperating – that makes conduct contumacious; instead, it is the stubborn resistance to authority which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988); *see also Graham*, 922 F.3d at 666 (stating "contumacious" means "willful disobedience of a court order").

Nor does BP's repetition of its argument that Park National disregarded the show-cause order (as well as PTO 65) advance BP's position with respect to contumaciousness. *See* Br.App'ee 52-53. First, the MDL court expressly based its dismissal on Park National's violation of PTO 65, not on any violation of the show-cause order. ROA.18-31292.20927. Moreover, because Lead Counsel missed PTO 65's significance, he likewise necessarily missed the significance of the related show-cause order. Finally, because

24

Lead Counsel was unaware of the need to comply with PTO 65 and the show-cause order, BP's emphasis on the trial court's warnings about the consequences of non-compliance is of no avail either. *See* Br.App'ee 52-53. As for BP's discussion of what Park National allegedly "should have" known, that goes to negligence, not contumaciousness, and so is beside the point. *See* Br.App'ee 52-53.

Further, contrary to BP's contention, *Graham* and other *Deepwater Horizon* MDL cases support reversal, not affirmance, of the dismissal. *See* Br.App'ee 54-56. These cases are discussed above. *See* 12-17, *supra.* Moreover, here is no merit to BP's puzzling argument that Park National cannot rely on *Graham* in its Reply Brief because it did not do so in its opening brief. Br.App'ee 54-55 & n.16. First, BP is wrong factually. Park National relied heavily on *Graham*. *See* Br.App't 15-16, 19-20, 27, 35-37. Second, the rule precluding assertion of new grounds in a reply brief plainly does not bar discussion of applicable law in a reply brief

As for BP's argument that the dismissal can be affirmed based on "a clear record of delay" without regard to whether there was contumacious conduct, that argument is meritless too. There is no evidence of the kind of

delay required for dismissal. Although BP tries to make the delay seem longer than it was (*see* Br.App'ee 51), Park National filed a sufficient PTO 65 statement about three months after the original due date and *within six days* after Lead Counsel learned of that due date.  *See* ROA.18-31292.21077-21086. Only "significant periods of total inactivity" can justify dismissal with prejudice based on delay.  *Morris v. Ocean Systems, Inc.*, 730 F.2d 248, 252 (5th Cir. 1984).  A "few months" delay (like the three-month delay here) is not enough.  *John v. State of Louisiana*, 828 F.2d 1129, 1131 (5th Cir. 1987).

### 2. The lesser-sanctions requirement has not been satisfied.

Dismissal with prejudice is permissible *only if* "lesser sanctions would not serve the best interests of justice."  *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982).  In addressing this requirement in the context of MDL lawsuits, courts have considered whether a "sanction other than dismissal" would thwart the MDL court's efforts "to streamline proceedings" and "would further delay the district court's efforts to adjudicate the MDL expeditiously."  *Barrera*, 907 F.3d at 236.  Of course, if that were the only consideration, dismissal with prejudice would be the go-to sanction because dismissal indisputably has the effect of "streamlin[ing] proceedings" and

resolving cases "expeditiously."  But the "interests of justice" also must be considered.  *Graham*, 922 F.3d at 667.

In *Graham*, this Court held that the D'Amico Appellants had made a good-faith effort to comply with the MDL court's requirements and that therefore "a lesser sanction would better serve the interests of justice," making "dismissal-with-prejudice . . . inappropriate."  *Id.*  The same is true here. In deciding whether dismissal is permissible, "the history of a particular case" should be taken into account.  *McNeal*, 842 F.2d at 790.  For five years, Park National diligently pursued its claims to the best of its ability and conscientiously observed the rules and orders of the court.  *See* 4-6, *supra.* Accordingly, dismissing its claims based on an inadvertent mistake by its trial lawyer was unjust and inappropriate.  Lesser sanctions should have been utilized.

Lesser sanctions include assessment of fines, costs, or damages against the plaintiff, and explicit warnings.  *Barrera*, 907 F.3d at 236. Instead of dismissing Park National's claims, the trial court should have tried one or more of those options. Given that Park National immediately complied with PTO 65 upon becoming aware of its applicability, any of these lesser

sanctions (including explicit warnings) undoubtedly would have been effective. *See* Br.App't 29, 32-33.

### 3. The absence of aggravating factors supports reversal of the dismissal.

As noted, the following aggravating factors can support dismissal with prejudice as a sanction for violation of a case-management order: misconduct by the party itself rather than the attorney; intentional misconduct; and misconduct that results in substantial prejudice to the moving party. *See* 21-22 & n.4, *supra.* In the context of discovery violations, these factors *must* be present for dismissal to be appropriate. *See* 18-19 & n.13, *supra.* Although BP denies that PTO 65 is a discovery order, at a minimum, it has significant characteristics of a discovery order. *See* 21, *supra.* Given the discovery-related aspects of PTO 65, it would be particularly appropriate to require aggravating factors before allowing dismissal based on a violation of PTO 65.

Because no aggravating factors are present and PTO 65 is at least akin to a discovery order, the extreme sanction of dismissal should be reversed. First, the violation of PTO 65 was attributable to Lead Counsel, not Park

National itself. *See* 18-19, *supra.* Second, the violation was not intentional. *See* 23-24, *supra.* And third, BP was not prejudiced. *See* Br.App't 28, 34.

With respect to prejudice, Park National long ago provided BP with the information required by PTO 65, so BP suffered no prejudice from Park National's late compliance. *See* Br.App't 3-4, 28, 34. BP suggests that prejudice to the court or other parties could satisfy the prejudice factor. *See* Br.App'ee 57-58 n.18. But in analyzing whether dismissal is an appropriate sanction, courts consider "only prejudice to 'the opposing party's preparation for trial.'" *Oprex Surgery (Baytown) LP v. Sonic Automotive Employee Welfare Benefit Plan*, 704 Fed. App'x 376, 381 (5th Cir. 2017) (quoting *U.S. v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003)).[5] Given that BP had long had possession of the substantive information called for by PTO 65 (and had the PTO 65 statement itself within three months of its due date), BP suffered no prejudice in preparing for trial.

Even if the interests of the MDL court and the other parties are considered, there is no prejudice warranting dismissal. PTO 65 only applied

---

[5] BP is wrong in suggesting *Barrera* and *Graham* discussed the prejudice factor. *See* Br. App'ee 39. The language quoted by BP relates to the lesser-sanction factor.

29

to about 600 of the tens of thousands of plaintiffs remaining on the MDL docket.  *See* ROA.18-31292.20614-20615.  And only seven of those plaintiffs (all of whom fall into either the Park National group or the Destin group) were dismissed and have appealed.  Moreover, the three-month period of time between the deadline for responding to PTO 65 and the date Park National actually responded to PTO 65 is barely a moment in the context of this MDL proceeding.  Simply put, allowing the claims of these Plaintiffs to go forward will not affect the overall resolution of the MDL.

> **F.  BP Has No Valid Answer to the Argument that the Court Should Review the Dismissal Order Itself and Not Just the Order Denying Park National's Rule 59(e) Motion.**

In its opening brief, Park National explained why the Court should not limit its review to the order denying Park National's Rule 59(e) motion, but instead should also review the dismissal order itself.  *See* Br.App't 36-38. Park National pointed out that in two recent *Deepwater Horizon* MDL cases, this Court had taken that approach, reviewing the dismissal orders themselves (and not just the orders denying post-judgment motions to reconsider) when claimants had failed to timely comply with pretrial orders.

*See Graham,* 922 F.3d at 666-67; *In re Deepwater Horizon (Perez),* 713 F. App'x 360, 362-363 (5th Cir. 2018).

BP counters that in *Graham* and *Perez* the claimants lost on the merits of the dismissal issue. Br.App'ee 44. But that does not undermine Park National's contention that this Court should review the dismissal issue on its merits just as it did in *Graham* and *Perez.* Equally unavailing are the factual distinctions that BP makes with respect to the *Graham* and *Perez* cases. The bottom line is that in *Graham* and *Perez*, this Court reviewed the dismissal orders rather than just reviewing the rulings on the reconsideration motions and should do the same here.

## II. MOREOVER, THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PARK NATIONAL'S MOTION FOR RECONSIDERATION.

Park National is also entitled to reversal because the denial of its motion for reconsideration resulted in manifest injustice. *See In re Benjamin Moore & Co.,* 318 F.3d 626, 629 (5th Cir. 2002) (manifest injustice is ground for granting Rule 59(e) motion).[6]

---

[6] BP is wrong that Park National cannot assert its Rule 59(e) arguments because it could have raised them before judgment. *See* Br.App'ee 45-46. As a practical matter, Park National could *not* have raised those arguments before judgment because, through

In deciding a Rule 59(e) motion, a court must "strike the proper balance" between two important judicial imperatives: "(1) the need to bring litigation to an end; and (2) the need to render just decisions on the basis of all the facts." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Here, the court got that balance wrong. The facts supporting that conclusion are set forth above and summarized below. The focus is on Park National's counsel because it is undisputed he made the mistake leading to dismissal.

Lead Counsel labored on this case for five long years – from 2013 through 2018. Until the end, he did everything right. He filed all the pleadings and other documents he was supposed to file; he met all the deadlines he was supposed to meet; he complied with all the PTOs he was supposed to comply with; and he jumped through every hoop he was supposed to jump through. He helped the courts accomplish their mission of "ensur[ing] that the people and entities affected by the accident with legitimate claims could recover." *Barrera*, 907 F.3d at 234.

---

inadvertence, its counsel did not realize the applicability of the orders. The cases cited by BP are not on point. *See id.*

And he did a good job. He provided the Neutrals with a written explanation of his clients' claims, accompanied by over 1,700 documents supporting those claims. *See* 4-6, *supra.* He succeeded in resolving the claims of fifteen of his seventeen banking clients. *See id.*

Then, after five years, he stumbled. Having successfully navigated the MDL labyrinth for so long, he inadvertently failed to pick up on the connection between PTO 65 and Park National's claims. *See* 6-7, *supra.* As a result, he failed to comply with PTO 65 by having Park National provide sworn answers to four damages questions and so also failed to comply with the show-cause order related to PTO 65.

Upon discovering his mistake, he immediately tried to correct it. His clients prepared answers to the four questions required by PTO 65, and he filed those answers within six days of discovering his error. *See* 10-11, *supra.* Neither BP nor the court ever complained about those answers.

So the question for this Court is whether the MDL court struck the right balance in dismissing Park National's claims with prejudice based on the conduct of its attorney – or at least whether the court made a decision within its discretion to make concerning the matter.

33

Park National submits the answer is no.  Park National recognizes the importance of enforcing procedures in an MDL case.  But pursuit of claims in an MDL proceeding should not be a death march in which any accidental stumble along the path is fatal to the claims.  As this Court wrote in a similar context involving the dismissal of claims with prejudice, "This case involves a question of life or death, or to be or not to be."  *Conner*, 20 F.3d at 1381.  In deciding to "resurrect" the plaintiffs' claims, the Court wrote, "[T]he right to sue is a valuable right that cannot lightly be exterminated.  We are thus loathe to approve of the dismissal of a case as a sanction . . . without evidence of the sort of maleficent conduct that justifies death."  *Id.* at 1381-83.

Nothing about this case that justifies the death of Park National's claims.  Both the dismissal order and the order denying Park National's Rule 59(e) motion should be reversed.  Any other result would be erroneous and lead to manifest injustice.

## CONCLUSION

Park National respectfully requests all relief sought in its Brief of Appellants.

Respectfully Submitted,

/s/  *Wesley A. Bowden*
Wesley A. Bowden
**LEVANTINO, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA**
316 S. Baylen St., Suite 600
Pensacola, Florida 32502
Tel:  850-435-7186
Fax: 850-436-6186
Email: wbowden@levinlaw.com


/s/  *Marc S. Tabolsky*
Marc S. Tabolsky
**SCHIFFER HICKS JOHNSON PLLC**
700 Louisiana, Suite 2650
Houston, Texas  77002
Tel:  713-357-5150
Fax: 713-357-5160
Email: mtabolsky@shjlawfirm.com

*Attorneys for Appellants*

**CERTIFICATE OF SERVICE**

In accordance with the Federal Rules of Appellate Procedure, I hereby certify that on July 26, 2019, a true and correct copy of the above and foregoing Reply Brief was duly and properly served on all counsel of record by the Electronic Service Provider for the Court as follows:

R. Alan York
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, TX 77002
AYork@ReedSmith.com

*Attorneys for Halliburton Energy Services, Inc.; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc.*

Kerry J. Miller
Daniel John Dysart
**FISHMAN HAYGOOD, L.L.P.**
201 Saint Charles Avenue, Suite 4600
New Orleans, LA 70170
kjmiller@fishmanhaygood.com
ddysart@fishmanhaygood.com

*Attorneys for Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, and Triton Asset Leasing, GMBH*

Don K. Haycraft
Devin C. Reid
Russell Keith Jarrett
**LISKOW & LEWIS LLP**
701 Poydras Street, Suite 5000
New Orleans, LA 70139
dkhaycraft@liskow.com
dcreid@liskow.com
rkjarrett@liskow.com

Andrew Langan
Matthew T. Regan
Martin R. Martos II
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
andrew.langan@kirkland.com
matthew.regan@kirkland.com
martin.martos@kirkland.com

George W. Hicks, Jr.
Aaron L. Nielson
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, DC 20005
george.hicks@kirkland.com
aaron.nielson@kirkland.com

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP, P.L.C.*

*/s/ Marc S. Tabolsky*
Marc S. Tabolsky

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P 32(a)(7)(B) because it contains 6,481 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Book Antiqua 14-point font, except that the footnotes are in 12 point font as permitted by Fifth Circuit Rule 32.1.

*/s/ Marc S. Tabolsky*
Marc S. Tabolsky
Attorney for Appellants

Dated:  July 26, 2019

38